[ALIEN. LOCAL LAW.]

## DOE, *ex dem.* GOVERNEUR's Heirs, *against* ROBERTSON and Others.

An alien may *take* real property, by grant, whether from the State or a private citizen, and may *hold* the same until his title is devested by an inquest of office, or some equivalent proceeding.

The act of Assembly of Virginia of 1779, c. 13. s. 3. secured from escheat all the interest acquired by aliens in real property, previous to the issuing of the patent, and left the rights acquired by them under the patent, to be determined by the general principles of the common law.

The title of an alien thus acquired by patent in 1784, under the laws of Virginia, and subsequently confirmed to him by a legislative act of Kentucky in 1796, and to his heirs, and their grantees, by an act of the same State in 1799, will overreach a grant made by Virginia to a citizen in 1785, and defeat the claim of all persons holding under such grant.

These legislative acts were valid, under the compact of 1789, between the States of Virginia and Kentucky.

THIS was an action of ejectment brought in the Circuit Court of Kentucky, in which the lessors of the plaintiff gave in evidence a patent from the Commonwealth of Virginia, for the lands in controversy, lying in Kentucky, to Robertus S. Brantz, then an alien, bearing date the 11th of October, 1784, founded on a land-office treasury warrant. They also gave in evidence a certificate of naturalization of the said Brantz, in the State of Maryland, on the 8th of November, 1784, and an act of the legislature of Kentucky, passed in 1796, entitled, " An act for the relief of Robertus Samuel Brantz," which recited that he was an alien when the patent issued ; confirmed his estate as fully as if he had been a citizen at the time of the grant, with a proviso, that nothing in the act should affect the right or title of any other person or persons, but only " the right which this Commonwealth may have in the said lands."  The said Robertus S. Brantz died in 1797, leaving a son, Johannes Brantz, an alien, incapable of inheriting the lands.  An act of the legislature of Kentucky, passed December 9th, 1799, reciting that Robertus S. Brandtz had departed this life indebted to Isaac and Nicholas Governeur ; that Johannes Brantz, his son and executor, and an alien, made a power of attorney to the said N. G. to sell the lands of the said R. S. B., for the payment of the debt, which sale had been made ; therefore, " all the right which the said R. S. B. had, before, and at his death," and the right of the said Johannes B. was declared to be vested in

the said I. and N. Governeur, " as fully as if t'e said Robertus S. B. *had done* in his lifetime, or as if the said Johannes B. had been a naturalized citizen when he executed the power of attorney for the sale and conveyance of the said lands."

The defendants claimed title under a grant of the Commonwealth of Virginia, dated the 2d of December, 1785, to one Duncan Rose, and proved a regular derivation of title from him.

The plaintiffs thereupon moved the Court to instruct the jury, that if they found that the grants to R. S. Brantz covered the lands in controversy, that the lessors of the plaintiff duly derive title under N. and I. Governeur, and that R. S. Brantz neither conveyed nor devised those lands, and left no heirs capable of inheriting them, and that the defendants were in possession at the commencement of this suit, that the verdict should be for the plaintiff.

The defendants moved the following instructions :

1. That if the jury find, from the evidence, that Robertus S. Brantz was an alien at the time when the patent given in evidence was procured by him, that nothing passed to him by said grant, but that it was void.

2. That if Robertus S. Brantz died, leaving his son an alien, and having no relations who were citizens of the United States, or of any of the States, then, upon his death without heirs, the title, if it had passed out of the Commonwealth by the patent, was immediately vested in the Commonwealth; and if the grant to Duncan

Rose, from the Commonwealth of Virginia, in-
cludes the land in controversy, then the act of
Kentucky, granting the land to N. and I. Gover-
neur, cannot, under the articles of the compact
between Virginia and Kentucky, overreach the
grant to Duncan Rose from the Commonwealth
of Virginia; and they ought to find for the de-
fendants.

3. That the plaintiff, showing no title or con-
nexion with Robertus S. Brantz, but through
and by virtue of the act of Kentucky, given in
evidence by plaintiff, such grant from Kentucky
is, by virtue of the 3d and 5th, articles of the
compact with Virginia, of inferior dignity, and
inoperative to overreach the grant by the State
of Virginia to Duncan Rose.

4. That the acts of Kentucky of 1796 and 1799,
given in evidence by the plaintiff, being in *pari
materia*, are to be taken together; that the latter
act is explained by the former, and by operation
of said two acts, and of the said compact between
Virginia and Kentucky, the title of the plaintiff,
as offered in evidence by him, is younger in date,
and inferior in dignity, and cannot overreach the
grant to Duncan Rose, so far as those grants
conflict.

5. That if they find that the grant to Duncan
Rose, given in evidence, includes the land held
thereunder by the defendants, then the grant of
the Commonwealth of Kentucky, in the act given
in evidence by the plaintiff, is the junior and in-
ferior claim of title, and the jury ought to find
for the defendants.

**1826.**

Governeur's
Heirs
v.
Robertson.

*Feb. 22d.*

The Judges of the Circuit Court being divided in opinion upon the instructions moved, the division was certified to this Court.

The counsel for the plaintiff made the following points :

1. That Robertus S. Brantz, both at common law, and by the special provisions of the act of Virginia of 1779, c. 13. s. 3. upon his naturalization, took and held an indefeasible title to the lands in question, under his grant.

2. That, consequently, the junior grant to Duncan Rose was void, and conferred no title ; and, of course, could not have estopped Virginia if no separation had taken place ; and, therefore, could not estop Kentucky, by the articles of compact between the two States, from vesting the title to those lands, by the legislative act of 1799, in I. and N. Governeur.

The defendants' counsel insisted,

1. That R. S. Brantz being an alien when the grant of Virginia issued to him, the title did not pass out of the Commonwealth ; therefore, the grant to Duncan Rose must be considered as the prior legal title.

2. That under the compact of 1789, between Virginia and Kentucky, the legislative acts of Kentucky of 1796 and 1799, under which the plaintiff claims, cannot overreach the prior grant from Virginia to Rose.

Mr. *Sampson*. for the plaintiff, argued, (1.) That

it had been conclusively settled by a uniform se-
ries of decisions in this Court, that an alien can
take, and hold, real property, either by grant or
devise, until office found.[a]  The grantee of the
State takes by purchase as much as a private
grantee.[b]  In *Craig* v. *Radford*,[c] the alienage
of a grantee from the State was presented dis-
tinctly as a positive bar to his taking, but the
Court determined the grant to be good, and the
decision of that point was inevitably involved in
the determination of the cause.   And there was
no reason, either of policy or law, for making a
distinction between a public and a private grant.
The title of the government being devested by
the grant, which is matter of record, it could not
be revested again but by an inquest of office, by
which alone the fact of alienage can be deter-
mined.   Every person resident in the country is
presumed to be a citizen until the contrary is
shown by a judicial proceeding.[d]  The govern-
ment, having once invested its grantee with a
title, cannot deprive him of it but in due course
of law; and the inquest of office is the appropriate
process, where the title to lands is in controversy.
But, it might be contended, that the grant of the
State to an alien is absolutely void, and not voida-

a  Fairfax v. Hunter, 7 *Cranch's Rep.* 603.   Craig v. Radford,
3 *Wheat. Rep.* 594.    Craig v. Leslie, 3 *Wheat. Rep.* 563.   Orr
v. Hodgson, 4 *Wheat. Rep.* 453.
b  *Co. Litt.* 18 b.
c  3 *Wheat. Rep.* 594.
d  1 *Bac. Abr. Alien.* C. 133.

1826.

Governeur's
Heirs
v.
Robertson.

ble merely; and a passage in *Vin. Abr.* might, perhaps, be relied on for that purpose. But this would be found to be a mere insulated *dictum*, unsupported by any other authority, or by any adjudged case. In *Page's case,*[a] it was "resolved, that in *the case of an alien,*" &c. ".the inheritance, or freehold of the land, is not vested in the king till office found under the great seal; for that is an office of intitling." The grants of the king are not void, unless the defect for which they are sought to be avoided appear on the face of the grant. So, here, the fact of alienage not appearing in the grant to B., is sufficient to show that it was not void. If it were contended that an alien could not *take*, because he could not *hold*, the answer would be, that he shall *take and hold*, until it shall appear, in the manner the law requires, that he cannot hold. The subsequent naturalization of R. S. Brantz had a retrospective effect, and confirmed and rendered valid his title, which was before subject to be defeated by an inquest of office.[b] So, also, the act of 1796 would have had the effect of confirming his title, even if he had never been naturalized. But his naturalization in Maryland was sufficient to give him all the privileges of a citizen in Kentucky, and, among others, that of holding lands, under the articles of confederation before the establishment of the present constitution. And, even supposing his

a  5 *Co. Rep.* 52.
b  2 *Bl. Comm.* 250    1 *Johns. Cas.* 309

title as an alien to be defective at common law, that defect was completely cured by the statute of Virginia of 1779, c. 13. s. 3. which provides, that " All persons, *as well foreigners as others,* shall have a right to assign or transfer warrants, or certificates of survey for lands; and *any foreigner purchasing lands,* may locate and have the same surveyed, and after returning the certificate of survey to the land office, shall be allowed the term of eighteen months, either to become a citizen, or to transfer his right in such certificate of survey to some citizen of this, or any other of the United States of America."

2. As to the defendant's claim under a junior grant, it must be regarded as entirely void, since the State of Virginia had already parted with all its title to Brantz, who (it had already been shown) was capable of taking and holding until office found. The grant to Rose was, therefore, absolutely void; the State having no title to the thing granted.[a] If, then, the junior grant was void, it could not be contended, that if any title was again cast upon the Commonwealth by the death of R. S. Brantz, without heirs capable of inheriting, it enured to the benefit of the defendant, and operated as a retroactive confirmation of his title. His patent only authorized him to survey waste and unappropriated lands; he undertook to find lands of that de-

---

*a* Polk's Lessee v. Wendell, 5 *Wheat. Rep.* 303. Alton Wood's case, 1 *Co. Rep.* 50. *Dyer,* 77. Green v. Watkins, 7 *Wheat. Rep.* 27.

scription ; and it is not for him to say that he mis-informed the government, and having surveyed not vacant, but lands already appropriated, had thereby entitled himself to be considered a purchaser without notice.[a] There is a difference, in this respect, between grants by the government, and mere private conveyances.[b] The grantee having failed to comply with the condition of the grant, the State could not be bound by it, or estopped by it from again asserting dominion over the lands, and re=granting them to another. The grantee takes an immediate title, or none at all.[c] Even a grant made expressly to commence *in futuro* would be void.[d]

Mr. *Bibb*, for the defendant, argued, (1.) That R. S. Brantz, being an alien when the original grant from the State issued to him, took nothing thereby, but the title remained in the government. He admitted the general rule, that an alien may take by purchase, and hold until office found ; but he insisted that the principle applied only to a private grant or devise by a citizen. At common law, a grant from the sovereign to an alien passes no title.[e] The grant of lands to an alien by the king, operates nothing ; it shall not

a  5 *Cranch's Rep.* 253.

b  Legat's case, 10 *Co. Rep.* 113.     Alton Wood's case, 1 *Co. Rep.* 51.

c  *Noy's Ma.* 10.    4 *Co Rep.* 61.    *Plowd.* 432.    10 *Co. Rep.* 62.

d  Berwick's case, 5 *Co. Rep.* 94.

e  *Vin Abr. tit.* Pre ogative, (*G. b.* 2.)

make him a denizen, so that he may take.[a]  A
grant from a private citizen to an alien takes
effect by act of the parties; a grant from the
government takes effect by act of law.  An alien
may take by purchase from an individual, because
it is for the benefit of the government that he
should be allowed to take, in order that the title
may pass to the government by escheat.  But if
the same effect were allowed to a grant from
the government to an alien, it would be for the
mere vain purpose of devesting the title of the
government, and vesting it in a party incapable
of holding it, in order to revest the very same
title, by means of an inquest of office.  Such a
proceeding would be contrary to all the analogies
of the law.  An alien cannot take by act of law.
An alien cannot, therefore, take as heir, or te-
nant in dower, or by the curtesy.[b]  The reason
why an alien cannot take in this manner is, be-
cause the law does nothing in vain; and it will
not, therefore, confer by grant an estate on the
alien which he cannot hold, for the nugatory pur-
pose of taking it back again by an inquest of
office.  This is the reason assigned by Lord
Chief Baron Hale, and by Mr. Chancellor Kent.[c]
The incapacity of aliens to take, is founded on

1826.

Governeur's
Heirs
v.
Robertson.

a 2 Bl. Comm. 351. Tucker's ed. 344.

b Calvin's case, 7 Co. Rep. 25.   Co. Litt. 2 b. 3. a. 31. a.
Plowd. 229.  2 Bl. Comm. 252. Tucker's ed. 249.   Hunter v.
Fairfax, 7 Cranch's Rep. 619.   Orr v. dodgson, 4 Wheat. Rep.
460.

c Collingwood v. Pace, 1 Ventr. Rep. 417.   Mooers v. White,
6 Johns. Ch. Rep. 365.

1826.

Governeur's
Heirs
v.
Robertson.

reasons of national or civil polity, rather than on principles strictly feudal.[a]

The principles and policy of the common law in this respect, have not been changed by the local laws of Virginia. The act of 1779, c. 13. under which the grant to Brantz purports to have been issued, manifests clearly the legislative intention not to permit aliens to take by grant, since it provides that they may purchase warrants, assign them, have them located and surveyed, return the plats and certificates to the Register's office, and then shall be allowed the term of eighteen months either to become citizens, " or to transfer such plat, and certificate of survey, to some citizen of this, or any other of the United States of America." *Expressio unius est exclusio alterius :* and this enumeration of privileges to aliens, all of which are in derogation of the common law, excludes that of obtaining a grant to himself whilst he continues an alien. Brantz, then, having procured this grant to himself whilst an alien, contrary both to the common and statute law, as well as the rules of the land office, the act of the Register, and of the Governor, in so issuing the letters patent, was unauthorized, and, as such, was absolutely void.[b] All the requisites to a valid grant were wanting in this case.[c] The public officers were

a 1 *Bl. Comm.* 392.   2 *Bl. Comm.* 258.   2 *Bl. Comm.* 278.

b King v. Clarke, *Freeman's Rep.* 172.   2 *Bl. Comm.* 352. Earl of Devonshire's case, 11 *Co. Rep.* 90.   Colt v. Glover, 1 *Roll. Rep.* 451.

c *Shep. Touchst.* 229.

restrained and disabled from granting to an 1826.
alien; he was incapable of receiving it; the Governeur's
grant was not made in the order and manner re- Heirs
quired by law. The title of the public demesne Robertson.
lands in England is vested in the crown; the
king has, by the constitution, the sole power of
granting them. But the king cannot, by his
grant to an alien, render him capable of taking.
In Virginia the title was in the people, or Com-
monwealth; not in the Governor, Register, or
other public officer. They could only grant the
land in pursuance of the express provisions of
law.

2. That, under the compact of 1789, the legis-
lative acts of Kentucky of 1796 and 1799, under
which the plaintiff claims, cannot overreach the
prior grant from Virginia to Rose. Supposing
that Rose's was not the prior legal title, in con-
sequence of the alienage of Brantz when he ob-
tained his grant, yet Rose, under his warrant,
survey, and grant, had a vested *interest* in the
land by the laws of Virginia, originating before
the grant to Brantz. The compact provides,
(art. 3. s. 7.) " that all private rights and inte-
rests of land, within the said district, derived
from the laws of Virginia, prior to such opera-
tion, shall remain valid and secure under the
laws of the proposed State, and shall be deter-
mined by the laws now existing in this State."
Art. 5. s. 9. provides, " That no grant of land,
or land warrant, to be issued by the proposed
State, shall interfere with any warrant hereto-
fore issued from the land office of Virginia.

1826.

Governeur's Heirs
v.
Robertson.

which shall be located on land within the said District, on or before the first day of September, 1791." So that the stipulations of the compact of 1789, secure all vested as well as contingent claims and titles to land, and provide for their determination by the then existing laws of Virginia. By the laws of that State then in force, the title of Brantz (supposing him to have had any) was cast upon the Commonwealth, by his death without heirs capable of taking by descent.[a] The interest of Rose under his patent became valid and secure by the third article of the compact, and, under the fifth article, it could not be interfered with by any grant from the State of Kentucky.[b] Every political society or government is bound by the ties of justice and morality, and to the observance of good faith in its contracts with individuals. The grant of 1785 to Rose, was a contract between the State of Virginia and the grantee.[c] If a private individual sells land without title, and subsequently acquires a title, it enures to the benefit of his grantee.[d] A vendor, purchasing in an outstanding title, cannot use it against his vendee. The same rules which are just and equitable as beween individuals, are binding on governments.

a Hunter v. Fairfax, 7 *Cranch's Rep.* 603. Orr v. Hodgson, *Wheat. Rep.* 460. Mooers v. White, 6 *Johns. Ch. Rep.* 365.
b Green v. Biddle, 8 *Wheat. Rep.* 1. 1 *Marsh. Kentuck. Rep.* 199. 3 *Marsh. Rep.* 219. 1 *Monr. Kentuck. Rep.* 60. *Littel. Rep.* 364.
c Fletcher v. Peck, 6 *Cranch's Rep.* 87.
d Barr v. Gratz, 4 *Wheat. Rep.* 222.

The legal maxim, that the king, or the common- 1826.
wealth, can do no wrong, implies the highest de- Governeur's
gree of moral excellence in the collective body Heirs
of society, and those who represent it. Every Robertson.
prerogative being created for the benefit of the
citizen, none of the powers of the government
can be exerted to his prejudice.[a] Hence the
maxims, that the prerogative of the king is no
warrant to do wrong ; the king is *estopped*, and
by his prerogative can do no wrong.[b] Virginia,
therefore, could not violate the obligation of her
contract with Rose, by using the interest of
Brantz when it lapsed in 1797, by his death,
without heirs capable of inheriting. A legisla-
tive act of Virginia, (had she retained her sove-
reignty over the territory of Kentucky,) passed
in 1799, to grant the land to Governeur, without
regard to. the vested interest of Rose, and those
claiming under his grant, would have been a law
impairing the obligation of contracts within the
prohibition in the .constitution of the United
States. Such a law, made by Kentucky, is
equally prohibited by her treaty .with Virginia.
But the acts of 1796 and 1799, (which, being in
*pari materia*, are to be construed together,). do
not constitute such a law. The former act con-
firms the title of Brantz, with the proviso, " that
nothing in the said act should affect the right or
title of any other person or persons." The sub-

a Magdalen College case, 11 *Co. Rep.* 72.
b *Plowd. Rep.* 246—248, 249.

1826.

Governeur's
Heirs
v.
Robertson.

sequent act transfers the estate to Governeur, as Brantz held it, subject to the proviso. It was not necessary, in the act of 1799, to repeat the proviso in that of 1796. It was sufficient to do what the act does, transfer the estate, after the death of Brantz, to Governeur, " as if the said Brantz had done (it) in his lifetime." This construction makes the acts consistent with good faith, with the compact with Virginia, and with the eternal principles of justice.

But, it had been argued, that the king's grants are not void, unless the fact of alienage appears on the face of the grant itself. It had, at the same time, been asserted, that Rose's grant was absolutely void, although the fact of the patent previously issued for the same land, does not appear on the face of his grant, but is to be proved by other evidence. But, when the authorities speak of a grant as void, all that is meant is, that it shall be held inoperative, and of no legal effect, whenever the facts which invalidate it shall appear. Whenever, by the pleadings between other parties, the facts show the king's title, judgment shall be given for him, although he is not a party.[a] A great variety of cases might be mentioned, where a resort to evidence *in pais* would be necessary to determine the validity of the grant. That the grant to Rose was not void, in the sense supposed, but that it was evidence of a contract between Virginia and the grantee

a *Plowd. Rep.* 248.

that it passed a vested interest capable of being transmitted from one to another by deed or will; that such interests of the junior patentee are treated as legal, and not mere equitable interests, and still less as non-entities, a number of cases from the local decisions were cited.[a]

As to the case of *Elmendorf* v. *Carmichael*,[b] which had been cited as determining the questions in this cause; it could have no weight as authority in this Court, because it did not decide the point as to the construction of the compact of 1789; a subject peculiarly of federal jurisdiction, which was involved in several other cases, all of which would be brought before this Court for revision. The opinions, therefore, of the State Judges, in that case, could be entitled to no more respect than the judgments of any tribunal, State or national, which this Court might be called on to revise on error.

The case of *Craig* v. *Radford*[c] had been cited as determining the question, that an alien can take by direct grant from the government. But, it would be found, upon examination, that Sutherland, under whom the respondent claimed in that case, was entitled to a bounty in land under the proclamation of 1783, for military services during the preceding war, and that he obtained his warrant and survey in 1774, at which time he was not an alien. He did not obtain a

1826.

Governeur's Heirs v. Robertson.

a 1 *Marsh. Kentuck. Rep.* 525. 3 *Bibb's Rep.* 535. 4 *Bibb's Rep.* 225. 1 *Monr. Rep.* 48. 189. 138.
b 3 *Littel. Rep.* 473.
c 3 *Wheat. Rep.* 594.

patent until 1788, and it is not, therefore, of this that the Court speak, when they say that he took the estate " during the war," and was not devested by any act of Virginia before the treaty of 1794, by which his title was confirmed. But the Court meant to refer to the act of Virginia of 1779, (passed during the war,) by which the legislature declared, that the surveys under the proclamation of 1763 were valid. All the other cases cited to show that an alien can take by grant, and hold, until office found, are cases of grants, or devises, from private individuals to an alien. The distinction between such conveyances and grants from the crown, is to be found in all the authorities, from the year books down to the latest elementary writers.

*March 13th.* Mr. Justice JOHNSON delivered the opinion of the Court.

This cause comes up from the Circuit Court of Kentucky, upon a difference of opinion certified from that Court.

The case was this : Robertus S. Brantz, through whom the plaintiffs make title, obtained, on the 11th of October, 1784, two grants from the Commonwealth of Virginia, comprising, together, ten thousand acres of land lying in Kentucky.

One Duncan Rose, through whom the defendants make title, obtained a similar grant, of the date of December 2d, 1785, covering a part of the same land.

Robertus Brantz, at the date of his patent,

was an alien, but became naturalized in Maryland on the 8th of November, 1784, less than one month after the date of his patent, and near a year before that of the defendant was obtained.

Some doubts appear to have been raised on the validity of Brantz's patent at an early period, and, in the year 1796, the legislature of Kentucky passed an act, reciting that B. was an alien when the patent issued, and affirming his estate as against the rights of the Commonwealth, leaving it to operate as to all other persons as if that act had not passed.

B. died in 1797, leaving a son, J. B., an alien, incapable of inheriting, and owing debts to a considerable amount to the Governeurs. The son, unaware of his disability, executed a letter of attorney, under which the land was sold, and the purchasers, the Governeurs, subsequently discovering this defect, obtained another act from that State affirming their estate.

And this makes out the plaintiffs' title.

The defendant's title is regularly deduced through the patent to Duncan Rose.

The record presents, first, a general instruction prayed for in behalf of the plaintiffs on their right to recover. And of this there can be no question independently of the points made in the instructions moved for by the defendant, having regard to the effects, 1st. of his alien character; 2d. that of his son; and, 3d. of the compact between Virginia and Kentucky on the rights of the parties.

These will be considered in their own language, and in their order. The first is,

" That if the jury find that R. S. B. was an alien at the time when the patents given in evidence were procured by him, nothing passed to him by the said patent, but that it was void."

Although this, as well as the subsequent prayers of the defendant, purport to present distinct propositions, it will be unavoidable that they should be considered in connexion with each other, and with reference to the general prayer of the plaintiff for a charge in his favour. The defendant's object in propounding them, is to repel the prayer of the plaintiff, and to obtain a charge that the jury should find in his favour. They are introduced, in fact, as grounds upon which the prayer of the plaintiff should be rejected.

And, in this view of the subject, the proposition stated draws after it the consideration of another, to wit: Whether, although the patent to Brantz should be pronounced void, in consideration of his incapacity to take at the time of its emanation, his subsequent naturalization did not relate back so as to obviate every consequence of this alien disability.

On this subject of relation, the authorities are so ancient, so uniform and universal, that nothing can raise a doubt that it has a material bearing on this cause, but the question whether naturalization in Maryland was equivalent to naturalization in Kentucky. To this the articles of Confederation furnish an affirmative answer, and the

defendant has not made it a question. Nor, in- 1826.
deed, has he made a question on the subject of Governeur's
relation back ; yet it is not easy to see how he    Heirs
could claim the benefit of an affirmative answer  Robertson.
on the question he has raised, without first ex-
tricating his cause from the effects of the subse-
quent naturalization, upon the rights derived to
Brantz through his patent.

The question argued, and intended to be ex- A grant of land
clusively presented here, is, whether a patent for the State, is
land to an alien, be not an absolute nullity.       void.

The argument is, that it was so at common
law, and that the Virginia land laws, in some of
their provisions, affirm the common law on this
subject.

We think, the doctrine of the defendant is not
to be sustained on either ground.

It is true, Sir William Blackstone has express- Examination
ed himself on this subject with less than his doctrine on
usual precision and circumspection ; but, whe- this subject.
ther the context be considered, or his authorities
examined, we shall find that this doctrine cannot
be maintained. The passage relied on is found
in his second volume, (p. 347, 348. of *Christian*,)
in these words, " If the king grants lands to an
alien, it operates nothing." But it would be
doing injustice to the writer not to weigh his
meaning by the words preceding and following
this sentence. His language is this, " But the
king's grant shall not enure to any other intent
than that which is precisely expressed in the
grant. As, if he grants lands to an alien, it ope-
rates nothing ; for such grant shall not also

1826.

Governeur's
Heirs
v.
Robertson.

enure to make him a denizen, that so he may be capable of taking by grant." And the authority referred to is *Brooke's Abr. Patent,* 62. and *Finch's Law,* 110. (It ought to be 111.)

If we could admit that this learned writer could have committed so egregious a blunder as to suppose that an alien must be made denizen before he could take by grant, as a general proposition, he might stand charged with having greatly transcended his authorities. But when it is considered, that the effect of an alien's being made denizen, is not to enable him to take lands, but to enable him to hold them against the king, we at once see, that his language is to be limited to the proposition laid down in the previous sentence, to wit: that the king's grants shall not enure to the double intent, when made to an alien, of vesting in him the thing granted, and then, by implication, constituting him a denizen, so as to enable him to hold an indefeasible estate.

Ancient authorities of the common law.

In the case referred to as abridged by *Brooke,* the latter proposition alone is laid down; and the case in the *Year Books,* which the author cites, affirms nothing more. This was *Bagot's case,* (7 *Edw.* IV. p. 29.) which appears to have occasioned a vast deal of discussion for several terms in the British Courts, and in which Bagot, and another grantee of an office by the crown, brought assize, and the defendant pleaded, as to Bagot, *alien nee.* In that cause there was no office found, and the question on this part of the case distinctly was, whether the grant did not both vest the right to the office, and create a ca-

pacity to maintain assize to recover it. So, in a
case in 4 *Leon.* 82. the same question was raised,
where there had been an inquest of office; and
in both, the decision distinctly was, that the
king's grant did not enure to an intent not ex-
pressed distinctly as its object; or, in other
words, to a double intent, one direct, the other
incidental. In the latter case, the alien's right
had been affirmed by a patent from the queen,
and the point argued was, that the right of the
party was protected by the act of the queen
against the effect of the office found. But, in
both these cases, the decision was no more than
this, that the act of the crown did not inciden-
tally make the party a denizen; and while an
alien, he could not be enabled, by any act of the
crown, to exercise rights which appertained only
to denizens, or to persons naturalized, or natural
born subjects.

The other authority to which *Blackstone* re-
fers, to wit, *Finch*, imports no more than that
an alien shall not maintain an action real or
mixed, but has no direct bearing upon the doc-
trine for which it seems to have been cited by
the author.

The words, in the passage in *Blackstone*, more
immediately relied on by the defendant, to wit,
" If he grants to an alien, it operates nothing,"
are obviously taken from another passage in
*Brooke's Abr. Patent*, 44. which article gives
those words as a dictum of Keble, one of the
Judges. And by referring to the authority in

1826.
Governeur's
Heirs
v.
Robertson.

the *Year Book,* on which the author relies, to wit, 2 *Hen.* VII. 13. the dictum is there found attributed to Keble. But, in that case, as in *Bagot's case,* there is nothing more argued than that the king's grant shall not enure to the double purpose. And the observation of Keble is only made by way of illustration, accompanied by several others of a similar character, such as that a grant of land to a felon shall not operate as a pardon; or a grant to a company not corporate, carry with it a grant of incorporation.

It is clear, therefore, that this doctrine has no sufficient sanction in authority; and it will be found equally unsupported by principle or analogy.

The general rule is positively against it, for the books, old and new, uniformly represent the king as a competent grantor in all cases in which an individual may grant, and any person *in esse,* and not *civiliter mortuus,* as a competent grantee. Femes covert, infants, aliens, persons attainted of treason or felony, clerks, convicts, and many others, are expressly enumerated as competent grantees. (*Perkins, Grant,* 47, 48. 51. &c. *Comyn's Dig. Grant,* B. 1.) It behooves those, therefore, who would except aliens, when the immediate object of the king's grant, to maintain the exception.

It is argued, that there is an analogy between this case and that of the heir, or the widow, or the husband, alien; no one of whom can take, but the king shall enter upon them without office found. Whereas, an alien may take by purchase,

and hold until devested by office found. It is argued, that the reason usually assigned for this distinction, to wit, "*Nil frustra agit lex*," may, with the same correctness, be applied to the case of a grant by the king to an alien, as to one taking by descent, dower, or curtesy: That the alien only takes from the king to return the subject of the grant back again to the king by escheat. But, this reasoning obviously assumes as law the very principle it is introduced to support; since, unless the grant be void, it cannot be predicated of it that it was executed in vain. It is also inconsistent with a known and familiar principle in law, and one lying at the very root of the distinction between taking by purchase and taking by descent. It implies, in fact, a repugnancy in language. Since the very reason of the distinction between aliens taking by purchase, and by descent, is, that one takes by deed, the other by act of law; whereas a grantee *ex vi termini*, takes by deed, and not by act of law. If there is any view of the subject in which an alien, taking under grant, may be considered as taking by operation of law, it is because the grant issues, and takes effect, under a law of the State. But this is by no means the sense of the rule, since attaching to it this idea would be to declare the legislative power of the State incompetent to vest in an alien even a defeasible estate.

That an alien can take by deed, and can hold until office found, must now be regarded as a positive rule of law, so well established, that the

1826.

Governeur's
Heirs
v.
Robertson.

Well esta-
blished rule
that an alien
may take by
purchase, and
hold, until of-
fice found.

reason of the rule is little more than a subject for the antiquary. It no doubt owes its present authority, if not its origin, to a regard to the peace of society, and a desire to protect the individual from arbitrary aggression. Hence it is usually said, that it has regard to the solemnity of the livery of seisin, which ought not to be devested without some corresponding solemnity. But there is one reason assigned by a very judicious compiler, which, from its good sense and applicability to the nature of our government, makes it proper to introduce it here. I copy it from *Bacon*, not having had leisure to examine the authority which he cites for it. " Every person," says he, " is supposed a natural born subject, that is resident in the kingdom, and that owes a local allegiance to the king, till the contrary be found by office." This reason, it will be perceived, applies with double force to the resident who has acquired of the sovereign himself, whether by purchase or by favour, a grant of freehold.

The laws of
Virginia pre-
vious to the
compact of
1789, respect-
ing the issuing
of grants to
aliens.

It remains to examine the effect of the Virginia laws upon grants made to aliens. Those laws provide that aliens may purchase warrants for land, and pass them through all the stages necessary to obtain a patent, and may exercise every power over the inchoate interest thus acquired, in the same manner with citizens, and after returning the plat and survey to the Register's office, shall be allowed eighteen months to become a citizen, or transfer their interests to those who are citizens.

These provisions, it is contended, import a prohibition to issue a grant to an alien.

But we think the inference by no means unavoidable ; and, in addition to the general and strong objections to raising an enactment by inference, consider it as unsupported either by the policy or the provision of the act.

It is well known that the purchaser of a warrant, under the laws of Virginia, acquired a beneficial interest in the soil, that the survey located that interest upon a particular portion of soil by metes and bounds, and the interest thus acquired was devisable, assignable, descendible, and wanted, in fact, nothing but a mere formality to give it all the attributes of a freehold. Hence a doubt arose, not whether an alien could acquire an interest under a warrant and survey, but whether that interest might not be subject to escheat. The object of the law was to encourage aliens to purchase, and to settle the country ; and all its provisions on this subject were intended to enlarge his rights, not to restrict them. Aliens arriving in the country, could not immediately be naturalized, but they might immediately enter upon those arrangements for establishing themselves when naturalized, which were necessary to precede a grant. Hence, the only true construction of the Virginia law is, that as to all the interest acquired in land previous to grant, it was intended to enlarge their rights, and secure them from escheat ; while, as to the rights which they might acquire by patent, they were to be left under the ordinary

1826.

Governeur's
Heirs
v
Robertson.

alien disabilities, whatever those were, which the law imposed.

The Virginia act, therefore, has no influence upon the rights of the parties in this cause.

The act of Kentucky of 1799, confirming the title of Brantz.

The object of the next four prayers for instruction in behalf of the defendant, is, to maintain the proposition, that the act of Kentucky of 1799, which confirmed the interest of the purchasers under the letter of attorney of the son of Brantz, was in derogation of the rights of Duncan Rose, the subsequent grantee.

Whether the junior patent attached to the land, upon the decease of Brantz without heirs capable of taking.

The argument is, that on the decease of the father, without an heir that could take, the land in controversy reverted to the State, and the junior patent then fastened-upon it in the ordinary manner in which it attaches to the soil when a prior grant is removed from before it. That the act of 1799 was nothing more than a junior grant for the same land, and a grant which the State was estopped from making to the prejudice of the prior patentee, as well upon general principles, as under the provisions of the compact between the two States.

It is obvious, that in considering this argument, the Court cannot place the defendant on more favourable ground than by substituting Virginia for Kentucky, and allowing him all the rights that he might have set up against the former State. And it is equally obvious, that to admit of the right set up in favour of the junior patent's attaching as a patent upon the escheat, it must be affirmed that escheated land was liable to be taken up by patent; whereas the act authorizes pa-

tents to issue upon waste and unappropriated
lands exclusively, and not upon escheated pro-
perty.    And so it has been settled by adjudica-
tions both in Kentucky and Virginia.    (Elmen-
dorf v. Carmichael, 3 *Littel. Rep.* 484.)

It is further obvious, that as to the claim set
up by the defendant on the ground of moral
right and estoppel, the Court will concede much
more than he has a right to assume, if it allows
him the benefit of his argument to the whole ex-
tent in which it may be applied to the rights and
obligations of individuals.    Assuming, *argu-
menti gratia,* that the State could not supersede
the right of the defendant derived under his pa-
tent, in any case in which an individual would be
estopped, or might be decreed to convey: But
it is only on the ground of fraud or contract,
that the law acts upon individuals in either of the
supposed cases.    Fraud is not imputable to a
government; but if it were, where is there scope
found for the imputation of it in the relation be-
tween a State and the patentee of its vacant
lands?    In selling the warrant, the State enters
into contract no farther than that the purchaser
shall have that quantity of vacant land if he can
find it.    And when the patent issues, it is to the
patentee, if to any one, that the fraud is imputa-
ble, if the land be not vacant.    The State never
intends to grant the lands of another; and where
the grantee is ignorant of the previous patent,
the maxim, *caveat emptor,* is emphatically appli-
cable to this species of contract.

But to what result would this doctrine lead

1826.

Governeur's
Heirs
v.
Robertson.

us ? A junior grant is to be vested with the attribute of hanging over a valid and indefeasible appropriation of soil, waiting to vest upon the occurrence of the casualty of an escheat or an indefinite failure of heirs ? This may not happen in a hundred years; it may not occur upon one life as in this case, but may occur after the lapse of one hundred lives. It is impossible that such a claim can be countenanced. Neither principle nor policy sustains it. And, in fact, the decision upon the first ground is fatal to the cause of the defendant upon the last; for, upon no principle but the assumed nullity of the patent to Brantz, could any contract be imputed to the State to make good the junior patent, under which the defendant deduces his title. In t. at case, the land would still have remained vacant land, and, as such, the junior patent would, of course, have taken effect upon it as a patent, and by the immediate operation of the land law, without reference to the supposed incidental rights here set up.

So far this Court has considered the cause as one of a new impression; but, on examining the adjudications quoted, they are satisfied, that in every point material to the plaintiffs, the case has been solemnly adjudicated in the Courts of Kentucky.

They will, therefore, direct an opinion to be certified in favour of the plaintiff.