JONES et al. vs. MINOGUE et al.

1. CHANCERY PLEADING: *Certainty requisite.*
   A bill in chancery, filed for the purpose of recovering the assets of an estate, and praying the appointment of a receiver, which fails to describe the property, is demurrable.

2. RECEIVER: *Subject matter of his trust should be designated.*
   A receiver should not be appointed to take charge of property without a sufficient description to enable him to ascertain the subject matter of his trust.

3. DECREE: *For distribution, certainty in.*
   A decree for the distribution of an estate should set out specifically the property to be distributed.

4. ALIEN: *Capacity to take and transmit land.*
   Under our statute, aliens may take and transmit land by inheritance or otherwise; and they could, at common law, take by devise.

5. CHANCERY PLEADING: *Answer and demurrer under the Code.*

A demurrer may be reserved in an answer under the Code pleading. but must be disposed of before the hearing, unless it goes to the jurisdiction of the court, or the sufficiency of the cause of action; and, in compelling the defendent to elect between·his demurrer and answer, and after overruling the demurrer, rendering a decree for the plaintiff without proof, while material allegations of the com⁻ plaint were denied by the answer, the court below erred.

6. — *No departure from the original purpose allowed.*

A complaint in equity which is insufficient to obtain the particular purpose for which it was designed cannot be used for any other purpose.

7. JURISDICTION: *In suits between citizens and aliens.*

The state courts have concurrent jurisdiction with the federal courts over controversies between citizens and aliens.

APPEAL from *Sharp* Circuit Court.

Hon. R. H. POWELL, Special Judge.

*English*, for appellants.

*Rose, contra.*

WILLIAMS, Sp. J.   The appellees filed their bill in the circuit court of Sharp county, chancery side, in which they averred in substance that they are citizens of the county of Tipperary, Ireland.   That a number of years ago, William Minogue, a brother of complainants, left Ireland and came to the United States, and was here naturalized, and made a citizen as the law directs.   That he settled in Lawrence county, Arkansas, in that part which is now in Sharp county, being naturalized, and having acquired considerable real and personal property.   That he made a will about the 9th of April, 1861, and departed this life.

That the will was duly probated before the clerk of Lawrence county, a copy of which is exhibited.

That excepting two small bequests named in the will, Wil-

liam Minogue bequeathed and devised all his property, real and personal, to appellees, and appointed Daniel Williams and James Ledford executors, who qualified as such, and took upon themselves the burden of performing the trust. That they paid off all the debts of the estate, and paid off and discharged all the specific bequests of the will, leaving an unadministered balance. That Williams died, leaving Ledford surviving executor. That appellees are the sisters and brother of William Minogue, and are the identical persons mentioned in the last will of William Minogue, and to whom he willed his property.

That the distance between Sharp county, Arkansas, and Tipperary, Ireland, is so great, and the common intercourse by mail and otherwise between the two countries was so cut off and broken up by the late war between the states of the United States, that although William Minogue died in April, A. D., 1861, appellees heard nothing of his death until the spring or summer of 1870.

That Ledford, the surviving executor, was and is a good and trustworthy man, of good property, and responsible individually, for the entire estate of William Minogue, and had given a good bond as executor, and had made no waste or mismanagement, and the estate was safe in his hands.

That while the estate was in this situation, and no one having set up claim thereto as residuary legatee or devisee, appellants James P. Jones, James Manning, Young McCain and William Davidson, united, combined and confederated together to cheat, defraud and swindle the heirs, devisees and legatees of William Minogue out of the estate, and to seize and appropriate it to their own use, or the use of some of them. That these frauds were intended to be carried out in a great measure by a series of orders made in the probate court of Sharp county, where the estate was, so that the perpetration of the

contemplated fraud on appellees might seem to have the approval of a court of justice and the sanction of the laws, when in fact the orders themselves were violations of the law, and perversion of justice.

The first of a series of orders that tend to deprive appellees of their right is, that on the 10th day of March, 1870, Young McCain, without ever having been appointed public administrator of Sharp county by the probate court thereof, or by any authority whatever, presented to the probate court of Sharp county his bond, dated January 3, 1870, signed by the securities, and in the usual form. That the said probate court approved the bond, although McCain had never been appointed public administrator; that McCain was irresponsible, had little or no property, and nothing could be made out of him by law; that the securities in the bond were irresponsible; that on the entire bond of ten thousand dollars there could not be recovered the sum of two hundred dollars; and the entire obligors, if even disposed, were not able to pay the amount of the estate of William Minogue, which facts were well known to appellants, the community, and the probate court of Sharp county, which approved the bond. That on the 11th day of March, 1870, when the estate of William Minogue was safe and well secured in the hands of Ledford, appellant Davidson, without giving any notice to Ledford, or alleging any default or mismanagement by him, pretending to act as attorney for Sharp county, but really, as charged, for the sole purpose of placing the estate in irresponsible hands, and swindling and defrauding these complainants, obtained in the probate court of Sharp county, an order on Ledford to turn over the estate to the public administrator, and that he take proper steps to escheat the estate, no heirs having appeared as recited in the order.

The public administrator was ordered to report his proceedings, and make out an inventory of the estate and sell the real

estate, and invest the proceeds in United States bonds. That Davidson well knew the effect of this order would be to take the estate from Ledford, a responsible man, and place it in the hands of irresponsible and untrustworthy parties; and it is charged, in effect, that he so intended; that the probate court of Sharp county afterwards made an order directing the public administrator, Young McCain, to turn the estate over to appellant, James P. Jones, as agent of one Manning, who professed to be a representative or assignee of Martin Minogue, one of the devisees of William Minogue (he claiming that the two sisters were dead, and Martin was now the sole devisee); that the order was made without any proof of Manning's rights, or, indeed, that there was such a person in reality; that McCain did not resist this order, and Davidson, instead of doing so as county attorney of Sharp county, connived at it, and stopped his proceedings to escheat the estate to the state, in order that Jones should have no difficulty or obstacle to contend with in getting his claim as agent of Manning before a willing court, and in order that every impediment might be removed, that Davidson withdrew his proceeding to have the estate escheated.

That after the order was made for Young McCain to turn over the estate to Jones, he went forward and collected notes, and that he had reduced some of the notes to cash, and had converted it to his own use, or to that of some of his confederates, and had wasted the same.

That this was the condition of the estate when appellee's agents were first enabled to look into it, and the estate was being rapidly wasted, and was tending to utter ruin, and was liable to be at any time paid to, or turned over, under an order of the probate court, to Jones, who is only an agent of James Manning, an entire stranger to all the community, if he be a real person; and such was the imminent danger of the entire

estate being lost and destroyed, that complainant had no adequate or full remedy at law or in equity, except by injunction, and a bill was filed in the probate court to restrain McCain from paying over the estate to Jones, which prayed that a receiver be appointed to take charge of the estate. That the probate judge of Sharp county, on presentation of the bill, granted an order of injunction, restraining McCain from paying over the assets of the estate to Jones or Manning, etc., and restraining Davidson from further prosecuting the claim of Manning to the estate in the probate court of Sharp county, until appellees had reasonable time to prove heirship, or right and title to the estate, and Perry West was appointed receiver of all the assets. That afterwards, by consent, this order of the probate judge was so far modified as to allow McCain to collect the assets, and on the promise of appellants that no waste should be committed, at their request the order for a receiver was set aside. The prayer is, that as appellees were without remedy at law, and the probate court of Sharp county had no jurisdiction, etc., appellants Jones, Manning and McCain be made defendants (Davidson is omittted in the prayer, although made a defendant in the caption). That defendants be required to discover whether Manning is a real or pretended person. Then follows a long special prayer in the nature of special interrogatories. The relief prayed is, that the injunction which had been granted by the probate court of Sharp county, restraining McCain from paying over the assets to James Manning, or to any person for him, be made perpetual, and for the appointment of a receiver, and that the order vesting assets of William Minogue in James P. Jones, for use of James Manning, be declared void for fraud; that appellees be declared devisees and legatees, and that the pretended assignment of Martin Minogue (which is averred in the bill to be a fraud and forgery) be set aside as a forgery, and for distribu-

tion or division of the estate among complainants, and for general relief.

No injunction seems ever to have been granted on this bill, though it seems that a receiver was appointed by the circuit judge. And in passing, we may as well here notice a point that has been made here, that the bill was defective, and the demurrer hereafter mentioned should have been sustained to it, because no property, real or personal, was described or specified in the bill, except by the general description, of the estate of William Minogue. This objection, we think, is well taken. The bill is remarkable for its vagueness. While equity is tolerant and not rigidly technical as to the form or mode of stating a case, yet certainty to a common intent, the lowest form in common law pleading should be observed, and vagueness is a defect for which a demurrer will lie. See Story's Eq. Pl., secs. 240, 241, 242. And it was left to inference, even by this general description, whether the estate consisted of real property, personal or mixed, whether of a mere liability of a wasting administrator or of substantial property. And upon this bill the court below appointed a receiver.

A court should never appoint a receiver and direct him to take charge of property, without a description of the same with reasonable certainty, such as will enable the receiver to ascertain and take charge of the subject matter of his trust. And before appointing the receiver the court below, of its own motion, even without a demurrer, should have required plaintiff to be more specific. Neither should the court, after overruling the demurrer, have proceeded to order distribution of the estate among complainants, without specifically setting out the property to be distributed, and not, as seems to have been done, left plaintiffs to go out and find what has been awarded them as best they could.

The plaintiffs were not entitled to greater relief than the

case made in the bill showed them entitled to. 13 Ark., 89 ; id., 189 ; 14 id., 45 ; 17 id., 120.

Young McCain filed his separate answer, denying that he had confederated with the other defendants to cheat, etc. ; denies any fraudulent intent, and avers that he received the estate by authority of the probate court, for the benefit of the devisees and legatees of William Minogue, offers to surrender the assets at any time to a receiver, and joins in the prayer of the bill for the appointment of one. He returns no inventory and adds nothing to the description of the property. It is still the estate of William Minogue, nothing more.

James P. Jones, James Manning and William Davidson filed their joint answer, Manning, however, not in person. Appellees made some effort to force Manning's personal appearance, having questioned the reality of his existence; the effort either failed or the matter was dropped; at least the record does not show his personal appearance. The first paragraph of the answer denies the identity of Martin Minogue with the legatee and devisee of the will of William Minogue of that name. The second paragraph denies that William Minogue was ever naturalized in the United States. As this raises substantially the same question which was raised by the demurrer, involving the rights of plaintiffs, we will discuss and settle it here.

It was not material whether William Minogue was naturalized or not; neither was it material that plaintiffs were unnaturalized. To say nothing of our statute, which enables aliens to transmit an inheritance, which has been the law since the revised statutes of 1839, and before (see R. S., ch. 49, sec. 6; Gaunt's Dig., sec. 2167) it is well settled that an alien may acquire an estate in land which will be good against all the world, except the state, and against it until office found. 1 Washb. Real Prop., pp. 48, 49, and note; *Governeur v. Robertson*, 11 Wheat., 332.

At common law, when a party dies leaving issue who are aliens, the latter are not deemed heirs at law, but the estate descends to those who have inheritable blood. But an alien may take by purchase. *Orr v. Hodgson*, 4 Wheat., 453. The word "purchase," in the above case, is used in its enlarged sense, which includes every other mode of acquiring property as distinguished from descent, and of course includes acquisition by devise. 4 Kent Com., pp. 373, 374 (marginal); id., 441 (marginal page). Land devised to an alien does not escheat until office found. *Taylor v. Benham*, 5 How. (U. S.), 233; *Knight v. Duplessis*, 2 Ves., 260; Co. Lit., 2–6; Powell on Devises, 316; *Hubbard v. Goodwin*, 3 Leigh, 512; 3 Wheat., 589.

In the further progress of this cause, even if we are wrong as to the common law, the question becomes immaterial. For the state, which alone has the right of escheat, if the property cannot descend to aliens, or be devised to them, has waived that right, or made its existence impossible, by act approved December 15, 1874, which amends section 235 of Gannt's Digest, so as to enable aliens to take lands by inheritance, will or deed, and transmit by deed, will or descent; and removes all disabilities of alienage in favor of heirs and devisees.

The 8th paragraph states that Manning is the owner of the estate, as assignee of Martin Minogue, who survived Bridget and even the other devisees of William's will. This paragraph, with the first, presents a material issue.

The 9th and 11th paragraphs deny the confederation and fraud in reference to the probate court orders. This also presents a material issue.

The 12th paragraph denies the averment of the bill, to the effect that there was no evidence before the probate court upon the application to turn over the estate to Jones.

The answer concludes as follows:

"And these defendants, not waiving any of their causes of demurrer herein, do demur and say :

" I. That this court has no jurisdiction of this cause of action or subject thereof.

" II. That plaintiffs have not capacity to sue.

" III. That there is another action pending between the same parties in the probate court for the same county.

" IV. That there is a defect of parties plaintiff.

" V. That the complaint does not state facts sufficient to constitute a cause of action.

" VI. That the bill of complaint is on its face multifarious, intricate and prolix.

" VII. That said bill does not show any consideration or amount in controversy between the parties herein.

" VIII. That there is no relief prayed for, whereby or upon which, this court can grant any relief.

" Defendants therefore pray to be discharged," etc.

The record shows that the appellees moved to strike out the answer and demurrer, because they had answered and demurred to the same cause of action ; or to compel defendants to elect whether they would abide by said answer or demurrer, and the same was submitted to the court.

This motion the court sustained, and defendants excepted to the ruling in thus compelling them to elect, and noted the same on the record, and they then elected to stand upon and abide by their demurrer.    The court overruled the demurrer, or rather the demurring clause or reservation of the answer, and the defendants declining to answer "further," a final decree was rendered against them; they appealed to this court.

The answer presents but few material issues.    The other paragraphs, not mentioned, are either admissions of allegations in the bill, or do not present anything material for us now to notice.    But those we have indicated above are quite sufficient

to have put the appellees upon proof, if the appellants were entitled to the benefit of their answer. Conceding that Mc-Cain's answer presented no issue except as to costs, which was personal to himself and concerns his own conduct only, and denied no material allegation of the bill, we cannot thus overlook the answer of the other defendants, if they had the legal right to it, and the court erred in compelling an election.

Section 136, civil code, authorized the filing of a demurrer with the answer, which demurrer was required to be presented for consideration of the court, at or before the calling of the cause for trial, after the filing of the same; or failing, the demurrer is regarded as being waived as to all points except the jurisdiction of the court, and that the pleadings demurred to do not state facts sufficient to constitute a cause of action or defense. This was substantially the practice in chancery in this state before the code went into effect, and it was customary to conclude an answer with a general demurring clause by way of reservations of the questions of law, and the conclusion of the old form of answer was much like the general demurring clause of this answer, with the further prayer that this reservation of the causes of demurrer might be taken at the hearing with like effect as though the same had been raised by demurrer specially.

This court has decided such reservation good in the old practice. *Meux v. Anthony*, 6 Eng., 411; *Sullivan v. Hadley*, 16 Ark., 150; *Lovette v. Longmire*, 14 id., 339. And this general mode of reserving the general question of the legal sufficiency of the bill prevailed under the English chancery practice. Says Mr. Daniel: "At the hearing, the defendant will in general be entitled to all the same advantage of this mode of defense (speaking of the demurring clause of the answer) that he would have had if he had adopted the more concise mode of defense by demurring." 2 Daniel Ch. Pl. and

Pr., 819 ; *Wray v. Hutchingson*, 2 M. & K., 235 ; *Milligan v. Mitchel*, 1 Milne & Craig, 433. It follows from these authorities, as well as the code, that in so far as the general sufficiency of the bill and the jurisdiction of the court were raised by the demurrer, which was the concluding part of the answer, the defendants had a right to insist upon it at the hearing ; and in so far as any special causes of demurrer were raised, which did not go to the very right of the matter as set forth in the bill, or the jurisdiction of the court, by the civil code, if not presented in due time, the same were waived.

We find, therefore, that the court erred in overruling the demurrer, and that it should have sustained it, because of the vagueness of the description of the subject matter of the suit. The bill could not be sustained as an original bill for relief; and although the charges of fraud were well and distinctly put, and the interrogatories well and pointedly propounded, we cannot sustain this as an ancillary bill for stay of proceedings, in aid of another suit, or as a bill of discovery : 1. Because the rules of equity pleadings do not allow us to so dissect a bill. It must be good for the object it proposes, in the same aspect presented, or not at all. 1 Daniel Pl. and Pr., 381 ; 1 Story Eq. Pl., 303–401. 2. The plaintiffs do not aver the existence of any suit, of which the discovery or staying of proceedings in the probate court is in aid ; nor do they promise or profess to intend to bring one ; on the contrary, they pray the relief here. 3. The vagueness in the description of the property is a defect in the bill, which affects it in every respect, in this, that plaintiffs thereby failed to allege, with sufficient certainty, any substantial right, as to which they have suffered wrong. He who complains of an injury must describe the matter as to which he has been injured, as well as the mode or manner of the injury, and the name of the wrong doer; the two last

named elements the pleader here has observed well, but neglected the first.

The court erred in compelling defendants to elect between their answer and demurrer; it erred when, after overruling the demurrer, it disregarded the answer and granted relief on the admission implied from the demurrer, without proof, while material allegations of the bill stood traversed and denied.

The defendants have argued here, that as plaintiffs are subjects of Great Britain, our courts have no jurisdiction to redress their wrongs, because the constitution of the United States conferred jurisdiction of suits between foreigners and citizens of the United States upon the United States courts. That constitution also provides, in the Xth amendment, that the powers not delegated to the United States by the constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people. Most of the powers prohibited to the states by the federal constitution, if not all, are enumerated in the 10th section of article I. of the constitution, and the power of extending the ordinary comity, which no civilized state on earth denies to the subjects or citizens of other states, that of applying to her courts for redress of wrongs, is nowhere prohibited to the states, either expressly or by implication, in the federal constitution. The provisions of section 2, article III, no more create an exclusive jurisdiction in the federal courts, in cases between citizens of the states and foreigners, than the same section creates an exclusive jurisdiction, in the same courts, in cases between citizens of different states, or between citizens of the same state claiming lands under grants of different states, or any other of the enumerated classes, excepting those cases in which from their nature the jurisdiction must be exclusive, as admiralty jurisdiction is held to be, the jurisdiction of the state

and federal court is concurrent.   This is especially so in cases of aliens.   If it were not so prior to the judiciary act of 1789, they were without remedy, and are now, when the amount in controversy is under $500.   Conkling's Treatise, 138, 139, note.   For it has been decided that without congressional legislation, the constitution alone conferred no jurisdiction. See case cited by Mr. Conkling.

For these errors, let the decree of the circuit court of Sharp county, in this cause rendered, be reversed, and the cause be remanded to said court with instructions to sustain defendants' demurrer to plaintiffs' bill, and allow them to amend the same, if they can do so and so desire, and if amended, to proceed with the cause as the law directs, and on failure of plaintiffs to amend their bill, that the same be dismissed, and to proceed in all things in accordance with law as herein directed.

Hon. E. H. ENGLISH, C. J., did not sit in this case.