LOUISVILLE PROPERTY CO. *v.* MAYOR AND CITY COUNCIL
OF NASHVILLE.

(*Nashville.*   December Term, 1904.)

1. **AMENDATORY STATUTE.** Act amending prior act "so, as
to read as follows," takes effect from date of amendment.

The effect of an amendatory statute which provides that an ex-·
isting act, or certain specified portions thereof, shall be
amended "so as to read as follows," is to substitute the lan-
guage of the  new act, in the sections indicated, for that used
in the old act, and such new provisions take effect at and from
the time of the amendatory enactment, and not before.  (*Post,
p.* 218.)

Cases cited and approved:   Cent. Pac. R. Co. v. Shackelford, 63
Cal., 265; Ely v. Holton, 15 N. Y., 598.

2. **FOREIGN CORPORATION.** Mere purchase of property by,
without registration of its charter, is not unlawful, but valid
as against every one save the State.

The act of 1895, chapter 81, amending the statutes then in force
prescribing the terms upon which a foreign corporation may
be admitted into this State, provides (sec. 1) that such corpora-
tion desiring to own property or carry on business in this State
shall first file with the secretary of state a copy of its char-
ter, and, by section 2, makes it unlawful for any such corpora-
tion "to do business, or attempt to do business, in this State" ·
without registering its charter in the office of the secretary of
state, as provided in the first section.   The plaintiff in error,
a foreign corporation, purchased the lots, for injury to· which
its action for damages is predicated, on April 16, 1898, but did
not file its charter in the office of the secretary of state until
June 11, 1898.

Louisville Property Co. v. Mayor and City Council of Nashville.

*Held*: That the mere acquisition or purchase of property by a foreign corporation, without complying with the requirements of said act, is not unlawful, but is valid as against every one save the State. (*Post, pp.* 218-225.)

Acts cited and construed: 1895, ch. 81; 1877, ch. 31.

Cases cited and approved: Williams v. Wilson, Mart. & Y., 248; Baker v. Shy, 9 Heisk., 85; Barrow v. Nashville, etc., Turnpike Co., 9 Humph., 304; Fritts v. Palmer, 132 U. S., 282; Seymour v. Slide & Spur Gold Mines, 153 U. S., 523; Doe, etc., v. Robertson, 11 Wheat., 333; Fairfax v. Hunter, 7 Cranch, 603; Cross v. DeValle, 1 Wall., 5; People v. Conklin, 2 Hill (N. Y.), 67; Wadsworth v. Wadsworth, 12 N. Y., 376; Jones v. McMasters, 20 How., 8; Davis v. R. R. Co., 131 Mass., 273; Raccouillat v. Sansevain, 32 Cal., 376; Gray v. Kauffman, 82 Tex., 65; Norris v. Hoyt, 18 Cal., 217; Chattanooga, etc., R. Co., v. Evans, 66 Fed., 809.

Cases cited and distinguished: Cary-Lombard Lumber Co. v. Thomas, 92 Tenn., 585; N. Y., etc., Bldg. & Loan Assn. v. Cannon, 99 Tenn., 345; Gilmer v. Savings & Loan Co., 103 Tenn., 272; Harris v. Water & Light Co., 108 Tenn., 245.

**3. SAME. Same. Purchase of real estate not carrying on business.**

There is a plain distinction, under our statutes with regard to the admission of foreign corporations, between the acquisition of property and the carrying on of business, and it would be a strained and unnatural construction to hold that a mere purchase of real estate by such corporation was, in effect, carrying on business in the State. (*Post, p.* 226.)

**4. SAME. Same. May maintain action for injury to property.**

A foreign corporation may, without registration of its charter, maintain an action for damages against a municipal corporation for injury to its real estate resulting from a change of grade of the street upon which such property abuts. (*Post, pp.* 215, 225.)

See cases cited under headnote 2.

Louisville Property Co. v. Mayor and City Council of Nashville.

5. **SUPREME COURT.** Will not go behind finding of facts by circuit judge.

'Where there is a statutory finding of facts by the circuit judge, the supreme court will not go into the record to determine other facts not included in the findings of the circuit court. ' (*Post*, pp. 215, 216, 225, 226.)

FROM DAVIDSON.

Appeal in error from Circuit Court of Davidson County.—W. C. CHERRY, Special Judge.

SLEMONS & BARTHELL, for Louisville Property Company.

K. T. MCCONNICO and HILL MCALISTER, for City of Nashville.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

In changing the grade of Broad street, in the city of Nashville, the municipality inflicted injury on three lots of the Louisville Property Company which abutted thereon, and this action was brought by the company, under the authority of section 1988 of Shannon's Code, to recover damages for this injury. There was a statutory finding by the circuit judge, who tried this case

without the intervention of a jury. The finding of facts was in accordance with the above statement, but a recovery was denied upon the ground that, at the time the Louisville Property Company took a deed to these lots, it, being a Kentucky corporation, had failed to comply with certain legislative acts regulating the transactions of foreign corporations with regard to business and property in this State.

The facts out of which this phase of the controversy grew, and with regard to which this legal conclusion was reached, are that on the 16th of April, 1898, the lots in question were conveyed by the then owner to the Louisville Property Company. At that date the company had not complied with our foreign corporation acts, but on the 11th of June, 1898, it filed with the secretary of state a copy of its charter, and two days thereafter, to wit, on the 13th of June, 1898, assuming this was necessary, it filed an abstract of its charter in the register's office of Davidson county, where the property is situate.

In view of the conclusions reached by the circuit judge, the soundness of which is seriously challenged by the plaintiff in error, it is necessary to consider the acts which, it is assumed, preclude the plaintiff in error from maintaining the present suit.

On the nineteenth of March, 1877, there was passed the first of the acts regulating the admission of foreign corporations into this State for the purpose of doing business and acquiring and holding real estate. This

act is chapter 31, page 44, of the Session Acts of 1877, and, by its terms, was limited so as to affect only foreign corporations organized for mining and manufacturing purposes. By the second section of the act it was provided that each of such corporations desiring to carry on business in this State should first file in the office of the secretary of state a copy of its charter, and also cause an abstract of its charter to be recorded in the office of the register of each county in the State in which it proposed to carry on business or to acquire land. By chapter 122, page 264, of the Acts of 1891, this act of 1877 was amended so as to apply to all corporations which might desire to own property or to do business in this State. By the third section of this act it was provided that it should be "unlawful for any foreign corporation to do, or attempt to do any business, or to own or to acquire any property in this State without having first complied with the provisions of this act;" and a violation of the statute, it was provided, should subject the offender to a fine of not less than $100, nor more than $500. On the 27th of April, 1895, the legislature passed another act, which is chapter 81, page 123, of the published acts of that year. This act is entitled, "An act to amend sections 2, 3 and 4 of an act passed March 21, 1891, being chapter 122 of said Acts, and providing for the authentication of copies of charters to be filed with the secretary of state, and registering abstracts of same in the register's office in each county in which the company desires or proposes to

carry on business." Section 1 of this amendatory act provides as follows: "That section 2 of an act passed March 21, 1891, being chapter 122 of said Acts, be so amended so as to read as follows: That each and every corporation created or organized under or by virtue of any government other than that of the State for any purpose whatever, desiring to own property or carrying on business in this State of any kind or character, shall first file in the office of the secretary of state, a copy of its charter. . . ." Section 2 provides "that section 3 of said act, passed March 21, 1891, be amended so as to read as follows: 'That it shall be unlawful for any foreign corporation to do business or attempt to do business in this State without first having complied with the provisions of this act, and a violation of this statute shall subject the offender to a fine of not less than one hundred ($100) dollars, nor more than five hundred ($500) dollars, in the discretion of the jury trying the case.' "

The effect of an amendment made in this form was to substitute language of the new act, in the sections indicated, for that used in the old act, and these new provisions took effect at and from the time of the amendatory enactment. *Cent. P. R. R.* v. *Shackelford*, 63 Cal., 265; *Ely* v. *Holton*, 15 N. Y., 598.

Now, comparing these two acts—that is, the amendatory act and the one amended—it will be found that there are at least two material differences between them. In the act of 1891 it was required of each for-

eign corporation coming into this State, either to do business or acquire property, not only to file a copy of its charter with the secretary of state, but also to cause an abstract of its charter to be recorded in each county in which it might see proper to go for either purpose, to be recorded in the register's office of such county; and by section 3 of the act it was made equally unlawful for any such corporation to do or to attempt to do business, or to own or acquire any property, in the State, without having first complied with these requirements. Chapter 81, page 123, of the Acts of 1895, however, in its first section, simply requires that a foreign corporation desiring to own property or to carry on business in this State shall first file in the office of the secretary of state a copy of its charter, while section 2 only makes it illegal for such corporation to do business or attempt to do business without meeting the requirements imposed by the first section. While, by the third section of the act of 1891 it was an offense, punishable by fine, for a foreign corporation to own or acquire any property in the State without having first complied with the statutory requirements, this legislative ban by the act of 1895 is no longer placed upon the acquisition of property, but is confined to the doing of business, or the attempt to do business, by such corporation in this State. Thus it will be seen, as was said in regard to a very similar statute of Colorado in *Fritts* v. *Palmer,* 132 U. S., 282, 10 Sup. Ct., 93, 33 L. Ed., 317, that this amendatory act does not prohibit foreign corporations

220        TENNESSEE REPORTS.        [Vol. 114

Louisville Property Co. v. Mayor and City Council of Nashville.

altogether from purchasing or holding real estate within the limits of this State. It does not declare a purchase of land by such corporation, made before it qualified itself to do business in the State, as unlawful, or the conveyance of the land so purchased as absolutely void as to all persons and for every purpose, or that the title to the land remains in the grantor despite his conveyance.

This act of 1895 was the one in force at the time the plaintiff in error took its deed to this property, and its rights are to be determined with regard to the terms of that act and the rules of law arising therefrom.

No controversy is made here, and none at this day could be made, as to the right of the State to prescribe the terms upon which a foreign corporation may carry on business (save that of interstate or foreign commerce) or hold real estate within its limits. But, while this is well settled, the question is, will it be permitted to the municipality of Nashville, which has injured the real estate in question, to defend against an otherwise just claim of compensation for the injury upon the ground that the plaintiff in error had failed to comply with the first section of this statute at the time it took its conveyance? To hold that this can be done, we think, would be counter to many cases furnishing strong analogies to the point involved in this case, and to others of the highest authority ruling upon the exact point here considered. We will now briefly refer to some of these cases:

An alien, under the common law, was incapacitated to hold real estate. This was a rule of public policy deeply imbedded in that system. No statute of exclusion could have given added emphasis to the rule. Yet, wherever the common-law system prevails, it has been held with entire unanimity, when the question has been presented, that an alien could take by purchase and hold against every one save the State. As was said in *Doe, etc., v. Robertson*, 11 Wheat., 333, 6 L. Ed., 488: "That an alien can take by deed, and can hold until office found, must now be regarded as a positive rule of law so well established that the reason of the rule is little more than a subject for the antiquary. It, no doubt, owes its present authority, if not its origin, to the regard to the peace of society, and a desire to protect the individual from arbitrary aggression." In other words, until the lands so held are escheated by the State, the alien has complete dominion over them. In accord with this authority are *Fairfax* v. *Hunter*, 7 Cranch, 603, 3 L. Ed., 453; *Cross* v. *De Valle*, 1 Wall., 5, 17 L. Ed., 515; *People* v. *Conklin*, 2 Hill (N.Y.), 67; *Wadsworth* v. *Wadsworth*, 12 N. Y., 376; *Jones* v. *McMasters*, 20 How., 8, 15 L. Ed., 805; *Davis* v. *R. Co.*, 131 Mass., 273, 41 Am. Rep., 221; *Raccouillat* v. *Sansevain*, 32 Cal., 376; *Gray* v. *Kauffman*, 82 Tex., 65, 17 S. W., 513; *Norris* v. *Hoyt*, 18 Cal., 217; *Chattanooga, etc., R. Co.* v. *Evans*, 66 Fed., 809, 14 C. C. A., 116. In *Williams* v. *Wilson*, Mart. & Y., 248, it was ruled by this court "that conveyances to aliens invest them with the title

222        TENNESSEE REPORTS.        [Vol. 114

Louisville Property Co. v. Mayor and City Council of Nashville.

they purport to convey, subject only to be divested by the government upon office found; and, *semble,* such alien may convey by deed or will, and the grantee or devisee will take the same estate he had, subject to the like right of the State." This case is referred to with approval in the latter one of *Baker* v. *Shy,* 9 Heisk., 85.

The same principle was applied in the case of a turnpike company which it was insisted had exceeded the limit of its power in contracting for land. In *Barrow* v. *Nashville, etc., Turnpike Co.,* 9 Humph., 304, it was insisted by a grantor that a deed made by him to the company conveyed land which the grantee under its charter, had no power to purchase. To this contention, overruling the chancellor, this court said: "It is a matter of no concern to him [the grantee] whether the corporation exceeded its powers or not. The State, from which they received their existence and by whose authority they exercise their powers, may institute proceedings against them for this excess of power."

The exact question presented here was examined in the cases of *Fritts* v. *Palmer,* supra, and *Seymour* v. *Slide & Spur Gold Mines,* 153 U. S., 523, 14 Sup. Ct., 847, 38 L. Ed., 807, in each of which it was insisted that the foreign corporation in question had failed to meet certain statutory requirements in order to enable it to purchase real estate in Colorado, and in each case it was held that only the State could raise the question of incapacity, and until it was so raised in some proper form, the corporation could accept and pass title.

But it is insisted that this court has announced in numerous cases a contrary view, and the doctrine of *stare decisis* is invoked to sustain the legal conclusion reached by the trial judge. We think, however, when the cases so relied upon are examined, it will be found that they fall short of sustaining that contention.

The first of these is the leading case of *Cary-Lombard Lumber Company* v. *Thomas,* 92 Tenn., 585, 22 S. W., 743. That was a suit by a nonresident corporation doing business in the State without having complied with the act of 1891. The company was engaged in dealing in lumber through an agent in the city of Memphis, and, while so engaged, sold and delivered from one of its yards in that city lumber used in the construction of a house being erected by Mrs. Thomas. It had failed to comply with the terms of chapter 122, page 264, of the Acts of 1891, which, as has been already seen, denounced every business transaction of a noncomplying nonresident corporation as unlawful and punishable by fine. So it was, this court, under the express terms of that act, could not have done otherwise, when this corporation came to seek an enforcement of its claim, than to repel it. In *New York, etc., Bldg. & Loan Ass'n* v. *Cannon,* 99 Tenn., 345, 41 S. W., 1054, there was an effort by a noncomplying foreign corporation to enforce a mortgage which had been executed by a citizen of this State upon property situated in this State to secure a note for money loaned, and it was held by this court the suit could not be maintained.

But it is to be noted that the mortgage in this case was but an incident—a mere security for the loan, which, under the act of 1891, was unlawful. The note being illegal and unenforceable, it followed, of necessity, that the mortgage could not be foreclosed. The same is true with regard to the case of *Gilmer* v. *Savings & Loan Company,* 103 Tenn., 272, 52 S. W., 851. There a mortgage was taken by a noncomplying foreign corporation to secure a loan made by it to a borrower. Afterwards, however, the company filed its charter for registration, and in all respects complied with the statute. Having done this, in view of the invalidity of the first transaction, the company sought to cure it by the taking of the second mortgage. Upon a bill filed to foreclose, it was held that the first mortgage was invalid because at the date of the loan, the company had not qualified itself to do business in the State and the court declined to enforce the second mortgage because it was obtained under false pretenses. In the case of *Harris* v. *Water & Light Co.,* 108 Tenn., 245, 67 S. W., 811, there was involved simply the question as to the right of the members of the firm to sue on a firm claim where one of the members of that firm was a foreign corporation which had failed to comply with the provisions of chapter 31, page 44, of the Acts of 1877, and chapter 122, page 264, of the Acts of 1891.

So it will be seen that all of these cases are clearly distinguishable from this, in that they involved business transactions between noncomplying foreign corpora-

tions and citizens of our State. These transactions were within the letter of the statute, and were denounced by it as offenses against the law. No one of them raises the question we have here. In the present case, however, we have a purchase of property not so denounced, and a third party, with no interest whatever in the conveyance made to the Louisville Property Company, undertaking to protect itself of its injurious act, by insisting that the party injured has no status, under our laws, either to acquire real estate, or to obtain redress for injury to it, when clothed with the apparent title. We do not think that such a party can successfully maintain this defense. We are satisfied the present case falls in line with those cases which hold that the power of inquest under the conditions presented in this record lies alone with the sovereign.

Before closing this part of the discussion, it is well to refer to a suggestion made at the bar by the counsel of the defendant in error to the effect that the charter of the plaintiff in error gave it the power to acquire and dispose of property, and that it was in fact carrying on business, within the terms of the statute, in making the purchase of these lots. To this suggestion two answers can be made, either of which we think conclusive: In the first place, neither the charter of the plaintiff in error, nor any statement as to the rights acquired by virtue of that charter, forms a part of the finding of facts by the circuit judge in the case, and we are pre-

cluded from going into the record for the purpose of ascertaining facts either to sustain or repel this suggestion. There is nothing in the finding of the trial judge which warrants the contention.

In the second place, it will be seen that all of these statutes make a plain distinction between the acquisition of property and the carrying on of business. The lawmakers evidently contemplated that a foreign corporation might enter the State to engage in business, and yet not seek to acquire property, or might buy property, and still not do business. Under them, it would be a strained and unnatural construction to hold that a purchase of real estate, as in the present case, by such a corporation, was, in effect, carrying on business in the State.

We hold, therefore, that the circuit judge was in error in the legal conclusion which he reached, and this results in the reversal of his judgment. We find, however, that he ascertained the amount of the damage inflicted upon the property of the plaintiff in error, and a judgment will be entered here for the amount so found to wit, the aggregate sum of $3,050.