## GROWERS WAREHOUSING CORPORATION et al. v. W. E. SAWYER TOBACCO COMPANY.

Middle Section.    July 2, 1927.

Petition for Certiorari denied by Supreme Court, December 17, 1927.

1. **Injunction. Mandatory injunction defined.**
For the purpose of determining whether the effect of an injunction is mandatory or prohibitory, the result of the enforcement of the writ on the defendant must be considered; and if it compels him affirmatively to surrender a position which he holds, and which, on facts alleged by him, he is entitled to hold, it is mandatory.

2. **Corporations. A foreign corporation may hold real property in Tennessee without filing its charter.**
A foreign corporation which is not entitled to carry on business in Tennessee may acquire and hold real property in this state without filing its charter here.

3. **Estates. Leasehold. Leasehold interests in land are realty in Tennessee.**
Although it was otherwise at the common law, leasehold interests in land are realty in Tennessee by virtue of Shan. Code, Sec. 63.

4. **Injunction. Courts do not look with favor on mandatory injunctions and they are rarely granted.**
Although courts of equity have the power to grant mandatory injunctions on interlocutory applications in exceptional cases, such injunctions are rarely granted before final hearing or before the parties have full opportunity to present all the facts in such manner as will enable the court to see and judge what the truth may be.

5. **Injunction. The function of an injunction is to afford preventive relief.**
The function of an injunction is to afford preventive relief, not to redress alleged wrongs which have been committed already. An injunction will not be used to take property out of the possession of one party and put it into that of another.

6. **Injunction. In exceptional cases courts will grant mandatory injunctions.**
It is true that the general principle is that the court will not, by preliminary injunction, change the possession of property, and transfer it to the complainant. But this is a rule to which there are and must be exceptions. If the possession of the defendant is a mere interruption of the prior possession of the plaintiff, that interruption will be removed by injunction, if the right is clear and certain, without driving the plaintiff to establish his title at law.

7. **Injunction.** A preliminary injunction will not be issued to divest one of possession of real estate.

The court of chancery has no more power than any other to condemn a man unheard, and to dispossess him of property prima facie his, and hand over its enjoyment to another on an ex parte claim to it.

8. **Injunction. Evidence.** Evidence held insufficient to warrant a mandatory injunction.

In an action to secure a temporary mandatory injunction to secure the possession of certain property, held that the courts will rarely issue a mandatory injunction divesting one of the possession of real estate, and the evidence in the present case was not sufficient to justify such an injunction.

Appeal from Chancery Court, Montgomery County; Hon. J. W. Stout, Chancellor.

Reversed and remanded.

True & Dorsey, of Springfield, and Roy Garrison, of Clarksville, for appellant.

H. N. Leech and A. R. Gholson, of Clarksville, for appellee.

FAW, P. J. The bill in this case was filed in the chancery court of Montgomery county, on March 1, 1927, by the Growers Warehousing Corporation, a Tennessee corporation (hereinafter called the Warehousing Corporation) and the Dark Tobacco Growers Cooperative Association, a Kentucky corporation domesticated in Tennessee, (hereinafter called the Association), as complainants, against the W. E. Sawyer Tobacco Company, a nonresident corporation (hereinafter called defendant Tobacco Company), as defendant.

The subject-matter of this suit is the possession of certain real property in the City of Clarksville, Tennessee, commonly known in that community as the "Buckner Factory."

Reduced to their substance, the averments of the bill are that the complainant Warehousing Corporation is the owner of the Buckner Factory, and has heretofore, and until defendant took possession in the manner hereinafter stated, been occupying and using same for the purpose of warehousing tobacco, which tobacco was bulked and prized in the buildings on said premises by the complainant Association under and by virtue of a contract between the two complainants; that defendant Tobacco Company, without authority from the complainants or either of them, and by fraudulent means, took possession of said Buckner Factory property and is refusing to yield possession of certain parts of said premises, as hereinafter specified, to the complainants or either of them; that defendant is a naked trespasser on said premises, and if permitted to continue in possession of said premises until November 1, 1927 (as it is declaring its purpose to do), the complainants will thereby suffer irreparable injury and damage; that on February 14, 1927, defendant filed a bill in the chancery court of Montgomery county

against one of the present complainants, to-wit: The Dark To-
bacco Growers Co-operative Association, and (by fiat granted on
a preliminary ex parte application) obtained an injunction inhibit-
ing the Dark Tobacco Growers Co-operative Association and its
agents from undertaking to interfere with its possession and use
of certain parts of said Buckner Factory premises, to-wit: the
entire basement of the factory proper, the boiler room, the first
floor above the basement of the factory, the office on the first floor,
the dry room on the second floor above the office, and any other por-
tion of the plant that it (W. E. Sawyer Tobacco Company) might
need for its business during the season; that the bill filed by de-
fendant W. E. Sawyer Tobacco Company was not filed in
good faith, but the institution of said suit was for the purpose of
enjoining the said Association from molesting the said Sawyer
Company in the occupancy of said premises and if the injunction
should be dissolved then the W. E. Sawyer Tobacco Company would
appeal to the Supreme Court of Tennessee, thus keeping said injunc-
tion in force, and before the Supreme Court could reach and hear
said cause, the defendant would have had the use of said premises
for the season, whether entitled to the same or not, thus wrong-
fully and unjustly and fraudulently depriving the complainants
of the use of said premises to their irreparable loss, damage and
injury; that there is no way to compensate complainants, or either
of them, in dollars and cents, for the injury, loss and damage they
would sustain, and no way to arrive at the amount of damage or
injury that the complainants will sustain by the present and con-
tinued use and occupancy of said premises by the defendant.

The bill also contains allegations as follows:

"The defendant, which claims to be a corporation with its situs
in Virginia set up business in Clarksville, Tenn., to buy, handle,
prize and sell tobacco, buying the same from farmers in and around
Clarksville, Tenn., and others to be delivered to it there, and there
by it classed, handled, prized and to be sold to whom and wher-
ever defendant might find satisfactory buyers. It is not incorpo-
rated under the laws of the State of Tennessee, and has never quali-
fied to do business in Tennessee, and is a foreign corporation, and,
therefore, has no right to do or transact any business in the State
of Tenn., and any contract or contracts it has pretended to make
in Tennessee are, therefore, void and unenforcible."

The prayer of the bill is that a mandatory injunction issue im-
mediately requiring and commanding the defendant forthwith to
remove all tobacco, aparatus and other property it has in or on
said Buckner Factory premises from said premises, and to remove
from said premises any and all obstructions to complainants' full
and free use and occupancy of said premises, and to desist from

further trespassing in or upon said premises or any part thereof; that defendant be enjoined and prohibited from allowing or permitting said tobacco, aparatus, or other of its property, or any other obstruction caused or placed by it on or in said premises, to remain where the same now is, and enjoined and prohibited from in any way obstructing the full and free use and occupancy by complainants of said Buckner premises or any part thereof, and that on the hearing said injunction be made perpetual. It is further prayed that said suit of W. E. Sawyer Tobacco Company v. Dark Tobacco Growers Co-operative Association, in the chancery court of Montgomery county, Tennessee, be enjoined, and that defendant be enjoined from further prosecuting or taking any steps therein, and that said injunction be made perpetual.

The defendant Tobacco Company answered the bill, and incorporated a demurrer in its answer. There is no occasion to state the grounds of the demurrer at this time.

In its answer, the defendant Tobacco Company admitted that the title to the property in controversy is vested in complainant Warehousing Corporation, but defendant averred that it (defendant Tobacco Company) is, and has been since January 12, 1927, lawfully and rightfully in possession of said property under and by virtue of a parol lease which expires on, and not until, November 1, 1927, by the terms of which lease contract defendant is obligated to pay the complainant Association a monthly rental of thirty dollars for the use of said Buckner Factory premises.

Defendant also admitted that it is "a corporation under the laws of the State of Virginia," and practically admitted that it has not filed its charter in the office of the secretary of the State of Tennessee; but, in response to the averments of the bill with respect to this subject defendant says:

"The position that this mandatory injunction must be granted because defendant corporation has never domesticated under the statute of Tennessee, is in direct conflict with the holding of the Supreme Court of the State, and that is sufficient answer thereto.

"The defendant company and all other foreign corporations can acquire real estate in fee, or for any less estate therein, by deed and contract, and the statute referred to has no effect whatever upon the validity of such deed or contract.

"The defendant company is not undertaking to enforce, or recover on a contract by it made with some individual, or other party. It is in the possession of real estate under contract and cannot be ousted by a mandatory writ of injunction by the State even, and certainly not by any citizen or corporation of the State."

Defendant avers that the aforesaid lease contract was made with defendant by a duly authorized agent and representative of com-

plaintant Association, with the knowledge and consent of complainant Warehousing Corporation, and that, upon the faith of said rental contract, defendant has expended $2028.84 in making alterations and repairs on the property in question, which alterations and repairs were proper and necessary in order to fit the property for the conduct of defendant's business therein, and were made with the knowledge of complainants and without protest or objection on their part.

We have stated merely the bare substance of the bill and answer, but we think this statement will suffice to present the question raised by the assignments of error.

The defendant's answer was filed on March 7, 1927, and on the following day (March 8th) the Chancellor heard the case on motion of the complainants for an injunction, or injunctions, as prayed for in the bill, and pronounced a decree, which was duly entered, as follows:

"This cause was heard on the application of complainants for a mandatory injunction to issue and compel defendants to vacate certain portions of a house, the property of complainants, and to deliver to complainants possession of said house.

"And on consideration thereof the application is allowed and such mandatory injunction is hereby granted.

"The court finds that the defendant is a foreign corporation; that it has not complied with the laws of Tennessee with reference to filing its charter with the proper officials of Tennessee, that it is doing business in violation of the laws of Tennessee in the warehouse in controversy known as the Buckner warehouse in Clarksville, Tennessee; the court further finds that the defendant has no right to the possession of said warehouse, and that complainants are entitled to the possession thereof without any interference on the part of defendant or any of its agents or servants. It is so ordered, adjudged and decreed.

"It is therefore adjudged and decreed that the defendant W. E. Sawyer Tobacco Company be and it is hereby enjoined from remaining in possession of said warehouse or any part of it, except for such time as may be necessary to remove its property from said building, which time is limited to fifteen days from this date. If necessary a writ of possession will issue to place complainant in possession of every part of said warehouse. It is further ordered that complainant recover of defendants the costs of this cause for which execution may issue.

"The defendant excepts to the foregoing decree and prays an appeal to the present term of the Supreme Court at Nash-

ville, Tennessee, now sitting at Nashville for the Middle Ten-
nessee, which is granted upon the execution of an appeal
bond as required by law.

"To such action of the court in allowing the defendant said
appeal at this time, the complainants excepted and now except.
This March 8, 1927."

The appellant Tobacco Company seasonably filed an appeal bond,
and a transcript of the record was thereafter filed in the Supreme
Court, but that court was of the opinion that it was without juris-
diction of the appeal, and the case was transferred to this court
pursuant to the provisions of section 10, chapter 100, of the Acts
of 1925.

Through its first and second assignments of error the appellant
asserts that the above quoted decree of the Chancellor, awarding
a mandatory injunction which, if enforced, would transfer the
possession of the property from defendant to complainants in ad-
vance of a hearing on the merits, was, and is, erroneous.

It seems quite clear that the injunction of which appellant is com-
plaining was mandatory.

For the purpose of determining whether the effect of an injunc-
tion is mandatory or prohibitory, the result of the enforcement
of the writ on the defendant must be considered; and if it compels
him affirmatively to surrender a position which he holds, and which,
on facts alleged by him, he is entitled to hold, it is mandatory. 14
R. C. L., p. 316.

We have heretofore held in this case, in disposing of a motion
made by appellees to dismiss the appeal, that the Chancellor's de-
cree granted relief final in character, and was therefore appealable.
Nevertheless the decree was pronounced upon a preliminary or
interlocutory motion made by complainants, and was based upon the
bill of complainants, the answer of the defendant, and a number of
ex parte affidavits offered by complainants in support of the alle-
gations of the bill. The averments of the bill were abundantly
supported by the above mentioned affidavits, but the sufficiency or
insufficiency of the affidavits to support the bill is not the determina-
tive question now presented for decision. Admittedly the defendant
was in possession of the property in dispute, and, according to the
averments of its answer, the defendant was lawfully and rightfully
in possession and entitled to remain in possession until November
1, 1927. Having, by its answer, put in issue the material aver-
ments of complanants' bill and presented a valid defense to com-
plainants' suit, was the defendant entitled to an opportunity to es-
tablish its defense pursuant to and in accordance with the forms
and methods prescribed by law? Has the defendant had its "day
in court?" There was no admission in the defendant's answer

which, in our opinion, afforded a predicate for the decree rendered. The defendant admitted that it is a foreign corporation and that it had not filed its charter in the office of the Secretary of State of the State of Tennessee. Therefore, defendant could not lawfully "carry on business" in this State; but a foreign corporation may acquire and hold real property in this State without filing its charter here. Louisville Property Co. v. Nashville, 114 Tenn., 213, 84 S. W., 810. A lease of lands or tenements for a term of one year or less may validly rest in parol. Shan. Code, sec. 3142, subsec. 4. Although it was otherwise at the common law, leasehold interests in land are realty in Tennessee, by virtue of Shan. Code, sec. 63. Kelly v. Schultz, 12 Heisk., 218, 219; Burr v. Graves, 4 Lea 552, 556; Matthews v. Crofford, 129 Tenn., 541, 556, 167 S. W. 695. If a noncomplying foreign corporation may acquire and hold title in fee to real estate in Tennessee, it would seem to follow, as a legal sequence, that it may acquire a leasehold interest in real estate and defend its possession thereof. There is "a plain distinction between the acquisition of property and the carrying on of business." Louisville Property Co. v. Nashville, supra, p. 226.

Courts do not look with favor on mandatory injunctions, and they will rarely be granted. 14 R. C. L., p. 317, sec. 15; State Board of Medical Examiners v. Friedman, 150 Tenn., 152, 165, 263 S. W., 75; Bank and Trust Co. v. Hotel Co., 124 Tenn., 649, 658, 139 S. W. 715; Brown v. Ice Co., 122 Tenn., 239, 122 S. W. 84; Condon v. Maloney, 108 Tenn., 82, 86, 65 S. W., 871; Post v. Railroad, 103 Tenn., 184, 216, 52 S. W., 301; Gibson's Suits in Chancery, Rev. Ed., secs 803 and 824.

Although courts of equity have the power to grant mandatory injunctions on interlocutory applications in exceptional cases (Gibson, sec. 803), such injunctions are rarely granted before final hearing or before the parties have full opportunity to present all the facts in such manner as will enable the court to see and judge what the truth may be. 14 R. C. L., p. 317, sec. 16; 32 Corpus Juris, pp. 24-26.

The decree here under review, if executed, would take the property in controversy out of the possession of the defendant and place it in the possession of the complainants, without requiring bond of complainants to indemnify the defendant against loss in the event the defendant should ultimately prevail in the suit. In Lacassagne v. Chapuis, 144 U. S., 119, 36 L. Ed., 368, 370, it is said: "The function of an injunction is to afford preventive relief, not to redress alleged wrongs which have been committed already. An injunction will not be used to take property out of the possession of one party and put it into that of another." This rule is "very generally held," but is "subject to some limitations and ex-

5 T. A.—40.

ceptions." See 32 Corpus Juris, p. 26, where a large number of cases announcing the rule are cited. Three cases are there cited as falling within the exceptions, viz: Pokegama Sugar-Pine Lumber Co. v. Klamath River Lumber etc. Co., 86 Fed., 538; Ex parte Conway, 4 Ark., 302, and Gordillo v. Del Rosario, 39 Philippine 829.

The headnotes to the opinion in Pokegama Sugar-Pine Lumber Co. v. Klamath River etc. Co., supra, (decided in the circuit court of the northern district of California) sufficiently indicate the nature of the case and points decided. They are as follows:

"1. Where sufficient grounds exist, a court of equity has the power to, and will, issue, on a preliminary application, a restraining order, though mandatory in effect and requiring affirmative action."

"2. Where the respondent, under claim of right, **enters by force** upon property in the possession and management of complainant, and **drives him away,** and assumes control of the same, an order restraining the respondent from interfering with complainant's management and control of such property will not be modified, though in its practical operation it is mandatory, and necessitates affirmative action on the part of the respondent in surrendering the possession he had thus attained." (The boldface is ours).

In Ex parte Conway, supra, where trustees appointed by a deed of assignment for creditors of a corporation sought an injunction restraining the directors from further intermeddling with any of the property, effects or assets, the right to relief was sustained, although the effect of the injunction would be to transfer the property, effects, and assets to the complainant; but, the general purpose of the bill in that case was to establish the trust and to protect the trustees, and aid them in the performance and the discharge thereof, and it was upon that theory that the injunction was granted, as will be seen from an excerpt from the opinion of the court as follows:

"It is true that the general principle is that the court will not, by preliminary injunction, change the possession of property, and transfer it to the complainant. But this is a rule to which there are and must be exceptions. If the possession of the defendant is a mere interruption of the prior possession of the plaintiff, that interruption will be removed by injunction, if the right is clear and certain, without driving the plaintiff to establish his title at law. In this case, by the agreed facts, the whole question, in truth, turns on the validity of the deed; and, if it be valid, the plaintiff's title and right to possession are clear and certain. Moreover, the general rule only holds in cases where the right to the possession cannot be settled until a final decree, as, where partners come into a court of equity for account and settlement, in

which case a receiver would be appointed. If, in this case, the trustees are entitled to relief, the court cannot mock them with the shadow and deny the substance. To deprive the defendants of possession without giving it to the trustees, and therefore to ap-. point a receiver, would be to destroy the trust and totally defeat the objects of the deed, besides exposing the · transitory and peculiar property, and the State, to irreparable injury. The court will not say that the trustees have a right to come into equity for protection, and can in no other way be protected, and in the same breath that, by so doing, they must necessarily destroy the trust. They are the officers of the court, for, by filing this bill and submitting themselves to its jurisdiction, they stand in the same attitude as if they had originally been appointed by the court; and the court will so shape its remedial process as fully to protect them, and enable them to execute their trust, and to administer· the assets which the assignment has placed within the jurisdiction of the court, and therefore, in this point of view, they are to be regarded but as receivers. When the bill states, in this case, that the deed of assignment was regularly executed, and specifically sets out all of its provisions; that it was made upon a good and valuable consideration; that the trustees had accepted the trust; that the defendants, being a majority of the local directory, had refused to surrender up the trust estate, or permit a schedule to be made of the property and assets of the bank; and that the trustees sought to have the trust estate protected and established, every averment was made that was necessary to give to the Chancellor clear and unquestionable jurisdiction. And these averments, when coupled with a prayer to have the trust estate protected and established and the defendants perpetually enjoined from further intermeddling with it, entitled the complainants to have the property restored to them, and the title confirmed, if, upon inquiry, the deed should not appear to be fraudulent. We hold the jurisdiction in the case, and the relief sought for, to be within the legitimate exercise of one of the great and primary branches of equitable relief, in regard to trust estates, which has grown up with the · chancery system, and been indissolubly interwoven with it for centuries.''

In Gorillo v. Del Rosario, supra, it was held that a preliminary injunction is proper to require managing partners to transfer the possession of the partnership property to a member of the partnership appointed by a majority of the partners to liquidate the assets, the term of the partnership having expired, and the managing partners having been charged with fraud. In its opinion the court there said that it was not dealing with a case, such as was supposed in the argument for the petitioners, where a person in possession, claiming to be owner in his own right, has been ejected

merely that the property may be turned over to his adversary pending the determination of the question of ownership, but that it was a case of agents who, by reason of their alleged lack of fidelity to the interest of their principal, have demonstrated their unfitness to retain possession of the business which had been intrusted to their management.

It is obvious, we think, that neither of the foregoing three cases, cited in Corpus Juris as exceptional cases, afford authority for taking the instant case out of the general rule.

The case law on the subject of "interlocutory mandatory injunction to compel surrender of possession" is exhaustively annotated and digested in 32 A. L. R. at pages 894-918. The annotator there states the general rule deducible from the authorities as follows:

"Generally, it may be said that the function of a preliminary or interlocutory injunction is to afford preventive relief by preserving the status quo, and not to redress alleged wrongs which already have been committed. In harmony with this view, it is usually held that an interlocutory or preliminary injunction will not be issued to take property out of the possession of one person and put it into that of another; nor will such an injunction be issued which indirectly has that effect."

In the above mentioned annotation some cases are cited, in addition to the three which we have mentioned as cited in 32 Corpus Juris, wherein a preliminary injunction was granted which operated to transfer property in possession of a party to his adversary; but, so far as our investigation has gone, these cases usually fall within one or the other of two classes, viz: (1) where the complaining party has been forcibly deprived of the possession, and (2) where there has been a change of possession effected secretly or suddenly while the aid of the court was being invoked, but before the hand of the court actually reached the parties. See 32 A. L. R., pp. 899-900.

In the case of Bettman v. Harness, 42 W. Va., 433, 36 L. R. A., 566, 571, the court said: "Possession is prima facie evidence of rightful title, because it is one of the elements of title, is sacred, and no court can in any form of proceeding take it from a man without a hearing, without overthrowing the maxim that no man shall be condemned in person or deprived of property without a day in court and due process."

In the case of State ex rel. Powhatan Coal Co. v. Ritz, 60 W. Va., 305, 9 L. R. A. N. S., 1225, 1231, authorities are cited which hold that preliminary injunctions which, in effect, dispose of the merits of the controversy without a hearing, or divest a party of his possession or rights in property without a trial, are void because in excess of the jurisdiction of the court. Other cases are there cited

which hold that such injunctions were "improvidently granted," and therefore erroneous. Among the cases cited in State ex. rel. v. Ritz, supra, is Arnold v. Bright, 41 Mich., 207, 2 N. W., 16, wherein a bill was filed by a lessor to set aside a lease procured through alleged fraudulent representations of the lessee, and to obtain possession of the property. Upon the filing of the bill an injunction was granted and issued which practically restored the complainant to possession. On appeal, the Supreme Court held that the injunction was "improvidently granted." In his concurring opinion, Judge Cooley (among other things) said:

"The most striking feature of this case is that, on the filing of the bill, by an ex parte order, the court adjudged the whole merits of the controversy, and by means of an injunction turned the defendants out of possession of premises of which they were prima facie lawful occupants under complainant's lease, and allowed the complainant to have the immediate benefit of a final decree in his favor, by entering and occupying. Inasmuch as the lease had then but five months to run, under notices which had been given to terminate it, and as a contested suit could not probably terminate in that time, the complainant was thus, by a preliminary and ex parte order, given the fruits of a final decree in his favor. . . .

"The court of chancery has no more power than any other to condemn a man unheard, and to dispossess him of property prima facie his, and hand over its enjoyment to another on an ex parte claim to it. In several cases it has been decided that possession of lands is not to be disturbed by means of a preliminary injunction."

Without further discussion, we hold that the injunction in the present case, which, if executed, would, in effect, oust the defendant from the possesson of the property in dispute, and the order for the issuance of a writ of possession to place the complainants in possession of said premises, were "improvidently granted," and erroneous. The appellant's first and second assignments of error are therefore sustained.

Our holding above stated is not to be taken as an adjudication that, on the facts as they appear from the aforesaid affidavits filed by complainants, the complainants would not be entitled to a decree awarding to them the possession of the property. The contrary is true. But we are of the opinion that it was error to make, on preliminary motion of complainants at the threshold of the litigation, a decree which transferred the disputed possession from defendant to complainants and, in effect, settled material and controlling issues sharply presented by the pleadings, and disposed of the merits of the controversy, thus depriving defendant of the opportunity to make its defense in due course according to the rules and practice established by law. "The court must admin-

ister the law as it finds it, and cannot make the law.'' Collins v. Crownover (Tenn. Chy. App.), 57 S. W., 357, 358.

''The danger is, that a wrong principle established to accomplish what seems to be right in one case, may defeat right and justice in many others. All cases, therefore, must be governed by the same general rules and principles.'' Marr v. Marr, 2 Head, 303, 312.

Through what appellant treats as a third assignment of error, appellant complains of the action of this court in denying two petitions heretofore filed by appellant in which it sought the issuance from this court of a writ or writs enjoining and inhibiting the Dark Tobacco Growers Co-operative Association from taking further steps in the case of W. E. Sawyer Tobacco Company v. Dark Tobacco Growers Co-operative Association, in the chancery court of Montgomery county. Written opinions were filed by this court, and are now a part of the record in this cause, which set forth our reasons for denying said petitions, and which, we assume, are subject to review by the Supreme Court on petition for certiorari.

Since our action on said petitions, additional light has been thrown on the questions presented by said petitions through the publication of the opinion of the Supreme Court in the case of Cockrill v. Peoples Savings Bank et al., 155 Tenn., 342, 293 S. W. 996. But the powers of the Supreme Court, under our constitution and statutes, are broader than the powers conferred on this court by the act of its creation. (Acts of 1925, chap. 100).

It results that the decree of the Chancellor is reversed and set aside and the cause is remanded to the chancery court of Montgomery county for further proceedings. The costs of the appeal will be adjudged against the appellees Growers Warehousing Corporation and Dark Tobacco Growers Co-operative Association.

In view of much that is said in the brief of appellant's counsel concerning the case of W. E. Sawyer Tobacco Company v. Dark Tobacco Growers Co-operative Association, it is proper to say further that that case is not before us and our decree is not intended to affect the operation of any decree or decrees which may have been made in that case. No effort was made to bring that case before this court by certiorari or to supersede the decrees therein, and it was not consolidated with or made a part of the record in this cause.

Crownover and DeWitt, JJ., concur.