James B. DOYLE, Appellant,

v.

Oliver A. FOX, J. E. Patterson and Corey Gabrielson, Appellees.

No. 14601.

United States Court of Appeals
Ninth Circuit.

June 12, 1956.

Malone & Sullivan, William J. Dowling, Jr., Raymond L. Sullivan, William M. Malone, San Francisco, Cal., for appellant.

James P. Shovlin, Jr., Marvin G. Giometti, San Francisco, Cal., for appellees.

Before HEALY, BONE and POPE, Circuit Judges.

POPE, Circuit Judge.

This was an action for treble damages under the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1881 et seq., and the regulations adopted thereunder and relating thereto. Judgment was for the defendant lessor and the plaintiff, lessee under a written lease who sought recovery for claimed overcharges, has brought this appeal.

It is conceded by both parties that the premises and the lease were at the time of the claimed overcharges subject to rent control under the provisions of Rent Regulation I of the Housing Rent Regulation covering the operations of the Office of Rent Stabilization.[1] The Executive Order which brought the housing accommodations here involved under control, established November 1, 1951, as the maximum rent date and January 14, 1952, as the effective date of the control order. The accommodations consisted of a motel located in Alameda County, California. On the maximum rent date it was not rented as it was still under construction. On December 31, 1951, the appellees, as lessors, and the appellant, as lessee, executed a written lease for a term of three years commencing on January 1, 1952. The lease provided that for the first two months thereof, lessee should pay as rent the gross receipts from the operation of the motel less $500. From March 1, 1952 through September 30, 1952, the lessee was required to pay either the gross receipts less $500 or $2000, whichever amount was greater. From October 1, 1952, the rent was to be $3000 per month. During the first month of January, 1952, the gross receipts were less than $500, and so nothing was paid for the month of January. For the month of February, the gross receipts were slightly more than $500 and the rent paid for that month was $175. The lease was surrendered on October 1,

1. This Regulation will be found in the 1951 Revision of Title 32(a), National Defense, Appendix, Code of Federal Regulations, Chap. XXI, pp. 2576-2630.

1952, but during the months of March, April and May, 1952, the appellant lessee paid the sum of $2000 as rent for the premises. In each of these months the sum thus paid was substantially more than would have been produced through the application of the formula provided for January and February, namely, gross receipts less $500.

It is the appellant's claim that since the motel was not rented on the maximum rent date, the maximum rent under the regulation would be as defined in § 93 of Rent Regulation I which provided that "For housing accommodations not rented on the maximum rent date which are rented after the maximum rent date, the maximum rent shall be the first rent for such accommodations after the maximum rent date." Appellant says that the "first rent" within the meaning of this language was the rental provision contained in the lease for the months of January and February, 1952.[2]

The appellees, however, say that this quoted portion of § 93 can have no application here for the reason that the rent for January amounted to zero, and that the appellant's contention would lead to the absurd conclusion that the maximum rent was nothing. Appellees say that the regulation refers to "first rent" and not to the "first rent paid".

Therefore, they say, the trial court was correct in its conclusion that the maximum rent if any must be fixed pursuant to the provisions of § 166 or Rent Regulation I which provides that where the maximum rent or any other fact necessary to the determination thereof is in dispute or in doubt or not known, the Director of Rent Stabilization, or the Area Rent Director, may make an order fixing the maximum rent.[3] The appellees argue that this was a clear case where the maximum rent was in dispute, in doubt or not known.

The facts are that the director failed to establish a maximum rent for this establishment under § 166. As the rent control law terminated without any such fixing of a maximum rent, it is plain that if § 166 provides the only means for determining maximum rent in this case then there was no ceiling and there can be no recovery here since the trial court was without authority to supply a maximum rent. Appellant, however, contends that the proper interpretation of the words "first rent" in § 93, is in the case of a lease of this character, the first rental formula, i. e., gross receipts less $500.

The question is whether the actual amount paid in dollars must be the "first rent", or whether the rate or formula

2. "The Rent to be paid by Lessee to Lessor hereunder shall be as follows, to-wit: (a) From the commencement hereof, to and including the 29th day of February, 1952, Lessee shall pay over to Lessor each month as rent under this lease, the whole amount of the gross receipts from said operation on the demised premises, less Five Hundred Dollars ($500.-00) per month only, which last mentioned sum the Lessee shall retain as the agreed upon total operating expense each month, regardless of whether said sum is more, less or the same as the actual amount of operating expense per month."

3. "Sec. 166. Orders where facts are in dispute, in doubt, or not known. If the maximum rent, or any other fact necessary to the determination of the maximum rent, or the living space, services, furniture, furnishings, or equipment required to be provided with the accommodations, is in dispute between the landlord and the tenant, or is in doubt, or is not known, the Director at any time on his own initiative, may enter an order fixing the maximum rent by determining such fact, or determining the living space, services, furniture, furnishings and equipment required to be provided with the accommodations which order shall be effective to establish the maximum rent from the effective date of regulation or date of first renting, whichever is later, but in no event earlier than July 1, 1947. If the Director is unable to ascertain such fact, or facts, he shall enter the order on the basis of the rent which he finds was generally prevailing in the defense-rental area for comparable housing accommodations on the maximum rent date and, where appropriate, may determine the living space, services, furniture, furnishings and equipment included in such rent."

provided for this period may measure or define the "first rent". No decision upon this precise point appears to be available. That lack of authority may be due to the very unusual provisions of this lease. But a parallel situation would be presented by the much more common case of a percentage lease. A provision for payment of a percentage of gross receipts also sets up a formula, under which the dollars paid would vary from month to month. And in passing upon the question of what the rent under such a lease was upon a stated maximum rent date, the official interpretation of the regulation has been that this "rental provision in the lease" established the maximum rent. In other words, in that comparable situation, the lease's formula for computing the rent is itself the maximum rent, not a sum in dollars. The interpretation of the regulation referred to appears in the margin.[4] It deals not only with percentage leases, but with other cases where the monthly rent is more or less dependent on a stated contingency. This official interpretation by the Office of Price Administration was adopted and confirmed successively by the Office of Housing Expediter, (12 F.R. 2986, 2987), and the Office of Rent Stabilization (16 F.R. 1631).

■ This court has noted that such administrative interpretations, unless plainly erroneous or inconsistent with the regulations, should be accepted by us.

**4.** Vol. 15 Pike and Fischer, O.P.A. Service, p. 200:1115, Interpretation M.R.–I, relating to § 4 (the section defining maximum rents, substantially as in Regulation 1, §§ 91 and 93, 8 F.R. 7324), "Provisions for Variable Rent":

"1. A written lease of a hotel structure, in effect on the maximum rent date, provides for rent based on a percentage of the gross receipts from the operation of the hotel by the tenant. On April 1, 1941, the maximum rent date, the rent payable for the month in which the maximum rent date falls amounts to $150.00. Under the same lease the average monthly rent for 1941 amounts to $150.00.

"Section 4 does not require that the rent be a definite amount in dollars. In a case where on the maximum rent date the tenant of a hotel structure or of a rooming house was obliged under a lease then in effect to pay a percentage of the gross receipts from the business conducted by the tenant in the structure, while that percentage cannot be increased, the actual dollar amount paid by the tenant to the landlord may fluctuate. This rental provision in the lease, if it was in effect on the maximum rent date, establishes the maximum rent.

"2. Assume the maximum rent date is April 1, 1941 and the effective date of the Regulation is June 1, 1942. On April 1, 1941, L leases an apartment to T for one year at a monthly rent of $25, the lease providing that in the event T pays his rent on or before the 10th day of a particular month, he shall be entitled to a discount of ten percent for that month (or that he need pay only $22.50 as rent for that month).

"The rent to be paid for the monthly period which includes the maximum rent date is $25, or if payment is made on or before the 10th of that month, $22.50. This rental provision, in effect on the maximum rent date and covering the rental period which includes the maximum rent date, establishes the maximum rent for the dwelling unit. L may continue after June 1, 1942, the effective date, to charge $25 for any month in which the rent is not paid on or before the 10th, but if payment is made on or before the 10th of the month, L may charge only $22.50. This would be true whether the particular dwelling unit is occupied on the effective date by the same tenant as on the maximum rent date or by some other tenant.

"3. Assume the maximum rent date is April 1, 1941 and the effective date of the Regulation is June 1, 1942. On April 1, 1941, L leases an apartment to T at a monthly rent of $45, the lease providing that T shall have the right to sublease and that upon subleasing the rent shall be increased at the rate of $2.50 for each subtenant, the increase to apply for that month or months during which the subtenant or subtenants are in occupancy.

"The rent to be paid for the monthly period which includes the maximum rent date is $45 plus $2.50 for each subtenant occupying the apartment during that month. This rental provision in effect on the maximum rent date, establishes the maximum rent. L may continue after June 1, 1942, the effective date, to charge $45 plus $2.50 for each subtenant occupying the apartment during the particular month or months in question. (Issued July 7, 1942; revised May 15, 1943)."

Skinner v. Johnson, 9 Cir., 224 F.2d 575, 576. And while the interpretation here referred to dealt not with the precise situation now before us, yet its construction of a comparable portion of the regulation as applied to an analogous set of facts, convinces us that to make the regulation consistent, we must consider that here the "first rent", means the January and February formula stated in note 2, supra.

■ Since the appellees demanded and accepted payment of rent in excess of the maximum rent prescribed under the Act for the months of March, April and May, 1952, the appellant was entitled to recover a sum not less than the amount of the excess. Title 50 U.S.C.A. Appendix, § 1895.[5] The undisputed evidence discloses that by receiving $2000 for each of these three months, when the gross receipts for those months respectively were $944, $1262.50 and $2462, the overcharges for the same months were $1556, $1237.50 and $38, or an aggregate amount of $2831.50.

■ Appellant asserts that this amount should be trebled. While the statute provides for treble damages, it also provides that the damages shall be the amount of the charge or overcharges "if the defendant proves that the violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation." We think that this proof was made and that treble damages are not here warranted.

In December, 1951, when the lease was being drafted, appellees were advised by their attorneys, and correctly, that the premises were not subject to rent control. They were not under control at that time, and appellees did not learn that the controls applied until about the first of June, 1952, when they consulted the Area Rent office. Appellant argues that appellees should have known that the Parks Air Force Base in the vicinity of the motel was being reactivated in February, 1952, and should have made inquiry at that time. We think that appellees sufficiently sustained the burden of proving good faith and reasonable care.[6]

The judgment is reversed and the cause is remanded with directions to enter judgment for plaintiff for the sum of $2831.50, together with a reasonable attorney's fee and costs to be fixed and determined by the court.

5. Originally appellant appears to have presented an alternate theory to the effect that the "first rent" was the sum of $175 paid in the month of February. Accordingly he filed a supplemental complaint to the first complaint, (which was filed on August 5, 1952), setting forth the amounts of rent paid during the later months of July, August and September. During the trial, however, appellant appears to have abandoned this alternate theory for the only proof of gross receipts made were for the months of March, April and May, and following that appellant amended his complaint to conform to the evidence received, and in this complaint alleged excess payments only for the months of March, April and May. The record indicates that the gross receipts for the month of August were $2645; that for that month the payment made was $2145. This would be precisely in accord with the formula mentioned. It is assumed that payments for months following May did not exceed what the formula required.

6. This lease was subject to control only through the narrow accident of its date. § 39(c) of Rent Regulation I provides that: "This regulation does apply to an underlying lease of any entire structure or premises which was entered into after the maximum rent date and prior to the effective date of the regulation while such lease remains in force with no power in the tenant to cancel or otherwise terminate the lease. . . ." By Executive Order dated January 12, 1952, 17 F.R. 403, the area in which these premises were located were brought under control, and the order fixed the maximum rent date as November 1, 1951, and the effective date as January 14, 1952. Had this lease been entered into on January 15, 1952, it would not have been subject to the regulation. This odd situation helps to explain the general confusion relating to the applicability of rent controls which prevailed generally at the time here in question, of which we take judicial notice.