**DEPARTMENT & SPECIALTY STORE EMPLOYEES' UNION, LOCAL 1265, R.C.I.A. AFL-CIO, Appellant,**

v.

**Gerald A. BROWN, Regional Director of the Twentieth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Appellee.**

No. 16843.

United States Court of Appeals Ninth Circuit.

Nov. 15, 1960.

As Amended Jan. 13, 1961.

**621**

Carroll, Davis, Burdick & McDonough, Roland C. Davis, San Francisco, Cal., S. G. Lippman, Washington, D. C., for appellant.

Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Norton J. Come, Asst. Gen. Counsel, James C. Paras, Atty., N. L. R. B., Washington, D. C., for appellee.

Before MERRILL and KOELSCH, Circuit Judges, and KILKENNY, District Judge.

KILKENNY, District Judge.

Appeal from an order of the United States District Court for the Northern District of California, Southern Division, dismissing appellant's complaint asking for an injunction against the representation election directed by appellee Regional Director of the National Labor Relations Board [1] pursuant to the provisions of § 8(b) (7) (C) of the National Labor

1. hereinafter called "Board"

Relations Act,[2] as amended, (73 Stat. 544, 29 U.S.C.A. § 158(b) (7) (C)). The following facts appear in the complaint:

On February 4, 1960, appellant union directed a letter to G. R. Kinney Co., Inc.[3] which operates a retail shoe store in Oakland, California, which letter[4] stated that appellant "intends to engage in an advertising campaign to inform the public that your store does not operate under fair union conditions" and that appellant did "not claim at this time to represent a majority of the employees of your store" and that it was not appellant's intention "to secure a union contract * * * until and unless a majority of your employees at your store voluntarily without any coercion of any kind, designate the union as their collective bargaining representative." The next day appellant caused a picket line to be formed in front of the Kinney store, the pickets carrying signs reading, "This store does not operate under AFL–CIO union conditions. Please do not patronize, Department & Specialty Store Employees' Union, Local 1265." Certain leaflets[5] were distributed by the pickets to passersby which stated, inter alia, "the employees of this store do not enjoy union wages, hours and other working conditions" and that, "your patronage breaks down * * * fair wages and working conditions which prevail in union stores and threatens the jobs of our members of those stores."

A copy of each of these documents was attached to and made part of the appellant's complaint. On February 17, 1960 Kinney filed with appellee an unfair labor practice charge[6] alleging that the Union was picketing its store in violation of § 8(b) (7) of the Act, and a represen-

2. hereinafter called "Act"

3. hereinafter called "Kinney"

4. "This is to notify you that our Union intends to engage in an advertising campaign to inform the public that your store does not operate under fair Union conditions.

"In this advertising campaign it is our exclusive purpose to persuade the public not to patronize your company and to urge that members of the public shop in retail stores where our Union members are employed under Union conditions.

"We do not claim at this time to represent a majority of the employees of your store, nor is it any part of the purpose of our advertising campaign to secure a Union contract covering these employees. In fact, our Union will refuse to enter into any such contract until and unless a majority of your employees at your store voluntarily without any coercion of any kind designate the Union as their collective bargaining representative.

"Any statements heretofore made to you which can be construed as inconsistent with this communication are hereby unconditionally withdrawn and specifically repudiated.

"Yours very truly,"

5. "Local 1265, Department & Specialty Store Employees' Union, Chartered by Retail Clerks International Association, AFL–CIO, Suite 109, 1444 Webster Street, Oakland 12, California, TEmplebar 2-3823

A Message To The Public

"The employees of this store do not enjoy Union wages, hours and other working conditions, nor do they have the advantage of the many other benefits of Union membership, such as union-negotiated medical and hospital benefits and the like.

"This store and the employees who work here are in competition with the many other fair Union stores in the area where Union conditions prevail for the members of our Union. Your patronage of this store breaks down these fair wages and working conditions which prevail in Union stores and threatens the jobs of our members at those stores.

"Our members are your friends and neighbors who have obtained Union conditions and job security through their Union. By their efforts your living standards and your security are likewise protected.

"We are sure that you will not wish to harm these many hundreds of our members in the community by giving your patronage to this store and its employees who do not meet Union standards. We seek your help in maintaining and improving these standards.

"Please Do Not Patronize Kinney's

Department & Specialty Store Employees' Union, Local 1265 R.C.I.A., AFL–CIO"

6. See Appendix 1.

tation petition[7] asking that an election be conducted to determine whether the employees of Kinney wished to be represented by the Union. This charge asserted that the picketing and advertising had as an object forcing or requiring the employer to recognize or bargain with appellant and/or forcing or requiring the employees of the employer to accept or select appellant as their collective bargaining representative.

The Regional Director investigated the charges. Upon the basis of this investigation he concluded that the picketing was for objects condemned by § 8(b)(7) and within the meaning of subparagraph (C); that the representation petition had been filed within a reasonable period of time from the commencement of the picketing and that the picketing raised no questions which should be decided by the Board before the election. Thereupon, the Regional Director concluded that an expedited election was indicated under the first proviso to the said subparagraph (C). After arriving at this conclusion and on March 10, 1960, the Director issued a notice of election to be held on March 14th and at the same time advised the parties that no complaints would be issued on the charge[8] of unfair labor practice. Appellant then demanded that the Director hold a hearing before the election to afford it an opportunity to produce evidence that no question concerning representation existed and that the picketing was not within the ban of § 8(b)(7). This demand was denied. Appellant then applied to the Board, on the same grounds, to stay the election. This application was denied on March 11th. The complaint charges the appellee with failing to give appellant a reasonable notice of the said election, of failing to afford the appellant a full and fair hearing, of failing to give appellant an opportunity to present evidence and cross-examine witnesses, and with utilizing a procedure contrary to law and abusing his authority by acting in an arbitrary and capricious manner to deprive appellant of due process and in derogation of its Constitutional right to exercise free speech. Likewise, it is alleged that appellant never demanded recognition from Kinney or demanded that said company execute or enter into a collective bargaining agreement and at no time sought to represent or require the employees of the company to designate the appellant as their collective bargaining representative.

On the day the Board denied appellant's application, appellant instituted this suit in the District Court to enjoin the Regional Director from proceeding with the scheduled election. The Regional Director moved to dismiss the claim on the grounds that, (1) the Court was without jurisdiction over the subject matter; (2) the holding of the election would not result in such injury as warrants the granting of injunctive relief; and (3) the complaint failed to state a cause of action. The District Court allowed appellee's motion and dismissed the complaint. At the same time it denied appellant's motion for a preliminary injunction.

■ Each of the parties has urged on the Court a number of acts which occurred subsequent to the filing of the complaint. We deem those acts of no significance in arriving at a proper decision in this case. For example, the fact that the election was conducted among Kinney's employees on April 18, 1960 in order to determine if they wanted to be represented by the appellant. The employees unanimously voted against such representation. On a motion to dismiss, the consideration of the Court is limited to matters appearing on the face of the proceedings. Sears, Roebuck & Co. v. Metropolitan Engravers, 9 Cir., 1956, 245 F.2d 67; Grand Opera Co. v. Twentieth Century-Fox Film Corporation, 7 Cir., 1956, 235 F.2d 303; Emmons v. Smitt, 6 Cir., 1945, 149 F.2d 869, certiorari denied 326 U.S. 746, 66 S.Ct. 59, 90 L.Ed. 446.

7. See Appendix 2.

8. See Appendix 3.

 Under ordinary circumstances, the decisions of the National Labor Relations Board in representation proceedings are reviewable only in the Courts of Appeal. The District Courts have no jurisdiction unless there is a showing of unlawful action by the Board and resulting injury, by departure from statutory requirements or those of due process. Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210; Leedom v. I. B. E. W., 1960, 107 U.S.App.D.C. 357, 278 F.2d 237; National Biscuit Division v. Leedom, 1959, 105 U.S.App.D.C. 117, 265 F.2d 101, certiorari denied 359 U.S. 1011, 79 S.Ct. 1151, 3 L.Ed.2d 1037; Leedom v. Norwich, Connecticut Printing Specialties Union, 1960, 107 U.S.App. D.C. 170, 275 F.2d 628; International Association of Tool Craftsmen v. Leedom, 1960, 107 U.S.App.D.C. 268, 276 F.2d 514. Equitable relief is clearly barred in the wide area of decision which depends on the Board's discretion and expertise. Leedom v. Kyne, 1957, 101 U.S.App.D.C. 398, 249 F.2d 490.

 The finding by the agency of probable cause is merely a statutory prerequisite to proceeding with the representation election. No hearing at the preliminary stage is required by due process as long as the required hearing is held before the final administrative order becomes effective. Ewing v. Mytinger, 339 U.S. 594, 598, 70 S.Ct. 870, 94 L.Ed. 1088.

Appellant seeks to bring itself within the exceptions to the general rule and argues that the Board departed from statutory requirements and those of due process, including freedom of speech, when it made an ex parte decision on the object of the picketing and ordered a representative election without affording the appellant an opportunity for hearing. It urges that §§ 8(b) (7) (C), 9(c), 10(c) and 10(l) of the Labor-Management Relations Act of 1947, as amended, (29 U.S.C.A. §§ 158, 159, 160) should be construed together and that the Board should have followed the procedure outlined in § 10. That part of § 8(b) (7) (C) with which we are concerned makes it an unfair labor practice for a labor organization or its agents:

"* * * to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

"(A) where the employer has lawfully recognized in accordance with this Act any other labor organization and a question concerning representation may not appropriately be raised under section 9(c) of this Act.

"(B) where within the preceding twelve months a valid election under section 9(c) of this Act has been conducted, or

"(C) where such picketing has been conducted without a petition under section 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: Provided, That when such a petition has been filed the Board shall *forthwith*, without regard to the provisions of section 9(c) (1) or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof; Provided further, That nothing in this subparagraph (C) shall be construed to prohibit picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course

of his employment, not to pick up, deliver or transport any goods or not to perform any services.

"Nothing in this paragraph (7) shall be construed to permit any act which would otherwise be an unfair labor practice under this section 8 (b)."

This particular provision was introduced into the Act as part of the 1959 amendment and has received little judicial interpretation. The Board took the position that § 8(b)(7)(C) authorized a separate procedure and proceeded to implement it with certain rules, regulations and statements of procedure.[9] In substance these rules and statements provided that on the filing of a charge alleging that a labor organization was engaging in conduct in violation of § 8(b)(7), the case would be given priority and promptly investigated and that if, after investigation, it appeared that the charge had merit, the Regional Director would issue a complaint and at that time make an application in the appropriate Federal District Court for an injunction against the picketing under § 10(l) of the Act.[10] It was further provided that if the investigation disclosed a state of facts to which § 8(b)(7)(C) would be applicable and that a "timely representation petition" had been filed, the Regional Director should suspend proceedings on the charge and proceed to investigate the petition. The Regional Director, by said rules and statements, is required to consider all documentary or other evidence relating to the matters and allegations set forth in the petition, no matter by whom presented. If the Regional Director decides that an election is in order and that there are no issues which would require a prior hearing, he is authorized to direct that an election be held in an appropriate unit of the employees. Any party aggrieved by the Director's direction of election may seek a review of that determination by filing a request

with the Board for special permission to appeal, and the Board may, if it deems it appropriate, order a stay of such election. After the election any challenges to the ballot or objections to the conduct of the election are investigated by the Regional Director and ruled on by him. His rulings are final and binding unless the Board, on application of an aggrieved party, decides to review the Regional Director's action. The Regional Director then issues a certificate of election results, including certification of representatives where appropriate, with the same force and effect as if issued by the Board. If the Regional Director determines that an election should be held on the petition, he dismisses the unfair labor practices charge, the investigation of which has been suspended pending the investigation of the representation petitions.

An analysis of § 8(b)(7) discloses that as a condition to the use of its provisions, there must be picketing and such picketing must,[11] in part, be for the purpose of forcing the employer to recognize the union involved as a bargaining agent for his employees or to force the said employees to accept the labor organization as their collective bargaining representative. If such picketing occurs under the conditions outlined in subsection (A) or (B), or in other words, where another union has already been lawfully recognized or where there has been a valid Board election within the preceding year, a violation of said section has been established.

We now turn to the subsection in controversy on this appeal; that is, where no other union has been lawfully recognized, a valid election has not been conducted during the preceding 12-month period and picketing is being done. Subsection (C) allows such picketing to continue for a reasonable period of time not to exceed thirty days. If, during such period, a representation petition is filed, such as was filed in this case, the picketing may

9. N. L. R. B. Rules & Regulations, Statements of Procedure. Series effective Nov. 13, 1959, §§ 101.22, 102.73, 102.95.

10. Rules & Regulations, §§ 101.2(b), 102.-74

11. Probable cause.

continue pending the outcome of the election. We now approach the language of said subsection (C), the meaning and application of which is in dispute.

The appellant earnestly contends that the hearing procedures required by § 10 (*l*) are applicable to proceedings under § 8(b)(7)(C). A proper construction of § 8(b)(7) makes it crystal clear that the Congress intended the section to apply to two subjects, namely: (1) unfair labor practices, and (2) representation proceedings. The principal purpose of the enactment was to declare picketing to be an unfair labor practice in the defined areas. The enactment refers to § 9(c) on two occasions and § 9(c)(1), (29 U.S. C.A. § 159(c)) on one occasion. The last mentioned section deals *only* with representation proceedings. The reference to § 9(c)(1) is in the proviso which specifically provides for an election in a representation proceeding. The petition referred to in the proviso refers back to the petition in the previous sentence, which is a petition under the representation legislation, § 9(c)(1).

Separate and distinct acts govern the procedure in unfair labor practice cases and in representation cases. The procedure to be followed in the unfair labor practice cases is outlined in some detail in § 10, (29 U.S.C.A. § 160), while the procedure to be followed in ordinary representation cases is outlined in § 9(c)(1), (29 U.S.C.A. § 159). These procedures are essentially different. As an example, the General Counsel is vested with final authority in connection with the investigation of charges and the issuance of complaints under said § 10. The provisions of § 9(c)(1) require the Board to investigate and provide an appropriate hearing upon due notice. § 8(b)(7) (C) requires the Board, in the indicated cases, to forthwith direct an election *without regard to the provisions* of § 9 (c)(1). If appellant's position is sound, we must interpret this legislation as eliminating the representation procedures as required by § 9(c)(1) and substituting therefor the procedures as outlined in § 10, which deal with unfair labor practices only and do not deal with the area of representation elections. This argument is fundamentally erroneous.

We must keep in mind that this type of legislation is remedial in character and is to be broadly and liberally construed to accomplish its intended purpose. N.L.R.B. v. Knoxville Pub. Co., 6 Cir., 1942, 124 F.2d 875; Jeffery-DeWitt Insulator Co. v. N. L. R. B., 4 Cir., 1937, 91 F.2d 134, 112 A.L.R. 948, certiorari denied 302 U.S. 731, 58 S.Ct. 55, 82 L.Ed. 565. It is the judicial responsibility of the courts to find that interpretation, in this type of legislation, which can most fairly be said to be imbedded in the statute in the sense most harmonious with its theme and with the general purposes which Congress has manifested. Local Union 219, Retail Clerks International Ass'n, A.F.L.–C.I.O. v. N. L. R. B., 1959, 105 U.S.App.D.C 232, 265 F.2d 814. The language of the Act is not to be distorted so as to reach unintended results. N. L. R. B. v. Texas Natural Gasoline Corp., 5 Cir., 1958, 253 F.2d 322. In construing a statute the mischief sought to be remedied should be considered. Fasulo v. United States, 272 U.S. 620, 47 S.Ct. 200, 71 L.Ed. 443; Helvering v. New York Trust Co., 292 U.S. 455, 54 S.Ct. 806, 78 L.Ed. 1361; Mastro Plastics Corp. v. N. L. R. B., 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309, rehearing denied 351 U.S. 980, 76 S.Ct. 1043, 100 L.Ed. 1495; N. L. R. B. v. Lion Oil Co., 352 U.S. 282, 77 S.Ct. 330, 1 L.Ed.2d 331; Worcester Felt Pad Corp. v. Tucson Airport Authority, 9 Cir., 1956, 233 F.2d 44, 59 A.L.R.2d 1121. There is no doubt that the purpose of this legislation was to place a rather severe and drastic limitation on picketing other than informational, and to provide for a representation election without delay.

That the Congress intended subdivision (C) to give power to the Board to hold an election without a hearing is demonstrated by the statement of Representative Barden, Chairman of the House

Labor Committee.[12] Even so, the Board made provision in its rules for a hearing in the representation phase of this section in two situations.[13]

The language of a statute is the best and most reliable index of its meaning and where the language is clear and unequivocal it is decisive, unless such language does not comport with the intent and objectives of the statute when viewed as a whole. N. L. R. B. v. Lewis, 9 Cir., 1957, 249 F.2d 832.

A court cannot assume any purposes of the legislature which the terms of the law do not indicate and then expunge provisions of the enactment in order to accomplish such proposed intention. Wright v. Blakeslee, 101 U.S. 174, 25 L.Ed. 1048. Adding to a legislative enactment by inference is not favored. Doe ex dem. Governeur's Heirs v. Robertson, 11 Wheat. 332, 24 U.S. 332, 6 L.Ed. 488.

Since the express words of this enactment permit the Board to call an election *forthwith* and prohibit the use of the time-consuming procedures provided by § 9(c)(1), we cannot add, by implication, a requirement that the Board must proceed under the time-consuming procedures required by § 10. Although statutory construction is a function of the judiciary, Folsom v. Pearsall, 9 Cir., 1957, 245 F.2d 562, the interpretation as placed on that statute by the agency in charge of its administration is entitled to great weight. Doyle v. Fox, 9 Cir., 1956, 234 F.2d 830; DeSylva v. Ballentine, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415; N. L. R. B. v. Coca-Cola Bottling Co., 350 U.S. 264, 76 S.Ct. 383, 100 L.Ed. 285.

Section 6 of the Act,[14] (29 U.S. C.A. § 156), gives the Board authority to make, amend and rescind, in the manner prescribed by the Administrative Procedure Act, such rules and regulations as are necessary. While the Board may not enlarge its authority beyond the scope intended by Congress, N. L. R. B. v. Lewis, supra, the Board may, where restrictive intention is not shown, adopt rules and regulations to carry out its myriad functions in a manner consistent with the fulfillment of the purposes of the legislation and Congress has entrusted the Board with a wide degree of discretion in the establishment of the procedure and safeguards necessary to insure fair and free elections. N. L. R. B. v. A. J. Tower Co., 329 U.S. 324,

12. "The purpose of the proviso to paragraph (C) of section 704(c) which states that when such petition has been filed the Board shall forthwith direct an election, is to enable an employer or the employees to obtain a prompt election instead of having to go through an indefinite and prolonged period of picket line warfare which could have the effect of placing the employer's business and the jobs of his employees in jeopardy.

"Such being the problem dealt with, it was not the intent that this proviso which was added in conference, should be used as a device or subterfuge by a picketing union to bring about a pre-hearing or so-called quickie election.

"Therefore, in all cases, it will be appropriate for the Board to investigate as to whether a labor organization is using the picketing as a device simply to bring about a pre-hearing election. Where the Board has reason to believe that this is the intent of the petitioning labor organization, the Board will be under a duty to direct the petitioner to follow the provisions of Section 9(c)(1) and to afford the opportunity for a hearing. The right to a hearing is a sacred right and it should not be denied where such denial would lend support to a subterfuge."

13. The Regional Director is authorized to order a pre-election hearing "in any case in which it appears * * * that the proceeding raises questions which should be decided by the Board before election," (§ 102.77(b)) and the Board may order a hearing after the election if material factual issues have been presented with respect to objections to the conduct of the election (§ 101.23(b)).

14. "The Board shall have authority from time to time to make, amend, and rescind, in the manner prescribed by the Administrative Procedure Act, such rules and regulations as may be necessary to carry out the provisions of this subchapter."

330, 331, 67 S.Ct. 324, 91 L.Ed. 322; Southern S.S. Co. v. N. L. R. B., 316 U.S. 31, 37, 62 S.Ct. 886, 86 L.Ed. 1246; N. L. R. B. v. Waterman S.S. Co., 309 U.S. 206, 226, 60 S.Ct. 493, 84 L.Ed. 704. Since the Congress eliminated the procedure set up under § 9(c) (1), we must assume it intended that the Board would make rules and regulations establishing its own election procedure under the provisions of § 6. The Board so interpreted the legislation and promulgated the rules and regulations which have been previously mentioned. We have no doubt of the Board's power in this respect and hold that the rules and regulations so promulgated were a valid exercise of the Board's power.

The argument of the appellant that the Board was required to hold a hearing and make a finding under § 10 that an unfair labor practice existed before it could proceed with the expedited election is basically unsound. If such construction was placed on this legislation, it would totally destroy the effect of the first proviso of subparagraph (C) and to that extent invalidate this remedial legislation. Certainly Congress did not intend to enact a vain and useless piece of legislation. It is obvious that the time required to comply with the hearing provisions of § 10 would far exceed the thirty days mentioned in the first sentence of subparagraph (C). The declared purpose of the legislation, as announced by the Chairman of the House Labor Committee, would, under such construction, be rendered nugatory. All that is required, even as a preliminary to seeking an injunction, is that the Board have *reasonable cause* to believe that there has been a violation of the Act. Douds v. International Longshoremen's Association, 2 Cir., 1957, 242 F.2d 808, 810. The Board in this case could certainly find a substantial basis on evidence that the picketing had for an objective the forcing and requiring of Kinney to recognize and bargain with the appellant. True enough, the picketing may have been informational and advisory to the

extent of being permissible under this legislation. This, however, is of no significance if the picketing also had as one of its objects the forcing and requiring of Kinney to recognize it as the bargaining agent of Kinney's employees. International Brotherhood of Electrical Workers, Local 501, A. F. of L. v. N. L. R. B., 341 U.S. 694, 704, 705, 71 S.Ct. 954, 95 L.Ed. 1299; N. L. R. B. v. Denver Building & Construction Trades Council, 341 U.S. 675, 689, 71 S.Ct. 943, 95 L.Ed. 1284.

It is not a requirement of due process that there should be a judicial inquiry before discretion can be exercised. It is sufficient, where only property rights are involved, that there is at some stage an opportunity for a hearing and a judicial determination. Ewing v. Mytinger & Casselberry, 339 U. S. 594, 599, 70 S.Ct. 870, 94 L.Ed. 1088. A post-election hearing, such as here provided, is sufficient to avoid a constitutional problem. Inland Empire District Council Lumber and Sawmill Workers Union, Lewiston, Idaho, v. Millis, 325 U.S. 697, 65 S.Ct. 1316, 89 L.Ed. 1877. Generally speaking, due process does not require a hearing at any particular time, but only before substantial rights are effected. This is true even though there is a material dispute as to the facts. Inland Empire District Council v. Millis, supra; Opp Cotton Mills v. Administrator, 312 U.S. 126, 152–153, 61 S.Ct. 524, 85 L.Ed. 624; Bowles v. Willingham, 321 U.S. 503, 520, 64 S.Ct. 641, 88 L.Ed. 892. Since § 8(b) (7) (B) and the Board's rules provide an opportunity for hearing before the appellant's right to picket may be impaired, the requirements of due process are satisfied. Yakus v. United States, 321 U.S. 414, 427–443, 64 S.Ct. 660, 88 L.Ed. 834; Phillips v. Commissioner, 283 U.S. 589, 596–597, 51 S.Ct. 608, 75 L.Ed. 1289. The concept of due process is not governed by a doctrinaire scope. What is fair in one situation may be unfair in another. In the last analysis, the question is whether the ex parte procedure to which the appellant was subjected followed the rudiments of fair

play. Chicago, Milwaukee & St. Paul Rwy. v. Polt, 232 U.S. 165, 168, 34 S.Ct. 301, 58 L.Ed. 554. The appellant insists that Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 138, 71 S. Ct. 624, 95 L.Ed. 817, is direct authority for his position that the action of the Board and the procedure established for conducting an election without a hearing violated due process. The ex parte executive order issued in Anti-Fascist Committee had no legislative sanction and claimed as its authority a directive of the President of the United States. The order contained no provision for a judicial review of the ex parte order, nor for a hearing either before or after the issuance of such order. We find no comfort for appellant in that decision. Peters v. Hobby, 349 U.S. 331, 75 S.Ct. 790, 99 L.Ed. 1129, is authority for the proposition that an agency, by regulation, cannot change, modify or abrogate a general executive order which would be in violation of a person's rights. We have already held that we are not faced with that problem in this case. Other cases cited by appellant have received our careful consideration. All such cases can be distinguished and an analysis thereof would serve no useful purpose.

The rules and regulations promulgated by the Board do not in any way contravene the provisions of § 8(b) (7) (C). The procedural provisions of § 10 are not applicable. The Board did not act in contravention of the statute or of due process in holding such election. Under the circumstances, the sole and exclusive jurisdiction is with the Board and the District Court had no jurisdiction to entertain the appellant's complaint.

Affirmed.

"Appendix

"1. United States of America National Labor Relations Board

"Charge Against Labor Organization or Its Agents

\* \* \* \* \* \*

"Case No. 20–CP–8. Date filed: 2–17–60

"1. Labor Organization Or Its Agents Against Which Charge is Brought:

"Name: Department and Specialty Store Employees Union, Local 1265, RC IA AFL–CIO.

"Address: 1444 Webster Street, Oakland 12, California.

"The above-named organization or its agents has engaged in and is engaging in unfair labor practices within the meaning of Section 8(b) Subsection (s) [Illegible] the National Labor Relations Act, and these unfair labor practices are unfair labor practices affecting commerce within the meaning of the Act.

"2. Basis of the Charge:

"Since July, 1959 and particularly February 3, 1960 and continuing to date, the above named Union threatened to, and did picket the store of the employer located at Oakland, California, interfering with deliveries and services to the store with an object thereof of forcing or requiring the employer to recognize or bargain with said union as the representative of its employees and/or forcing or requiring the employees of this employer to accept or select this Union as their collective bargaining representative although said union is not the certified representative of the employees of this employer and no petition for election has been filed by such Union.

"By the acts set forth above and by other acts and conduct, this Union interfered with, restrained and coerced employees in the exercise of their rights guaranteed in Section 7 of said Act.

"3. Name of Employer: Oakland G. R. Kinney Co., Inc.

"4. Location of Plant Involved: 10323 E. 14th St., Oakland 3, California.

"5. Type of Establishment: Retail Store.

"6. Identify Principal Product or Service: Shoes.

"7. No. of Workers Employed: 9.

"8. Full Name of Party Filing Charge: James B. Stuart.

**630**

"9. Address of Party Filing Charge: 221 Fourth Avenue, New York, New York.

"10. Tel. No.: SP 7-4500.

"11. Declaration: I declare that I have read the above charge and that the statements therein are true to the best of my knowledge and belief.

"Feb. 15, 1960.
 "/s/ By James B. Stuart,
 "Vice President."

"2. United States of America
 National Labor Relations Board

"Petition

\* \* \* \* \* \*

"Case No. 20–RM–326. Date filed: 2–17–60

"The Petitioner alleges that the following circumstances exist and requests that the National Labor Relations Board proceed under its proper authority:

"1. Purpose of this Petition:

\* \* \* \* \* \*

"B. (x)RM—Representation (Employer).—One or more individuals or labor organizations have presented a claim to Petitioner to be recognized as the representative of employees of Petitioner as defined in section 9(a) of the act.

\* \* \* \* \* \*

"2. Name of Employer: Oakland G. R. Kinney Co., Inc. Employer Representative to Contact: Harold Rowen. Phone No.: LY 1–1595 (Belmont, California).

"3. Address(es) of Establishment(s) Involved: 10323 East 14th Street, Oakland 3, California.

"4a. Type of Establishment: Retail Store.

"4b. Identify Principal Product or Service: Shoes.

"5. Description of Unit Involved: Included: all employees. Excluded: supervisors as defined in the Act.

"6a. Number of Employees in Unit: 9.

"6b. Is This Petition Supported by 30% or More of The Employees in The Unit? [ ] Yes [ ] No.

\* \* \* \* \* \*

"8. Recognized or Certified Bargaining Agent: None. Name: None.

\* \* \* \* \* \*

"9. Date of Expiration of Current Contract, If Any: None.

\* \* \* \* \* \*

"11a. Is There Now A Strike or Picketing At The Employer's Establishment(s) Involved? Yes. X No \* \* \*.

"11b. If So, Approximately How Many Employees Are Participating? None.

"11c. The Employer Has Been Picketed By or On Behalf of Department and Specialty Store Employees Union, Local 1265, RCIA AFL–CIO, a Labor Organization of 1444 Webster Street, Oakland 12, California, Since February 5, 1960.

"12. Organizations or Individuals Other Than Petitioner (And Other Than Those Named In Items 8 and 11c), Which Have Claimed Recognition As Representatives, And Other Organizations And Individuals Known To Have A Representative Interest In Any Employees In The Unit Described In Item 5 Above (If None, So State): None.

"Name: None.

\* \* \* \* \* \*

"I declare that I have read the above petition and that the statements therein are true to the best of my knowledge and belief.

"Oakland G. R. Kinney Co., Inc.,
 "/s/ By James B. Stuart,
 "Vice President.

"Address: 221 4th Avenue, New York City, New York. Telephone number: SP 7–4500.

"3. National Labor Relations Board
 Twentieth Region

"830 Market Street, San Francisco 2, California
 "Telephone YUkon 6–3500

"[Stamped]: Received March 10, 1960

"March 9, 1960

"Oakland G. R. Kinney Co., Inc.

"221 Fourth Avenue

"New York City, New York

"Attn: Mr. James B. Stuart, Vice President

"Re: Department and Specialty Store Employees Union, Local 1265, RCIA, AFL–CIO, Case No. 20–CT–3

"Gentlemen:

"The above-captioned case charging a violation under Section 8(b) (7) of the National Labor Relations Act has been carefully investigated and considered.

"It does not appear that further proceedings on the charge are warranted inasmuch as a timely valid representation petition involving the employees of the employer named in the charge has been filed within a reasonable time from the commencement of the picketing described in said charge, and a determination has been made that an expedited election should be conducted upon such petition in accordance with the provisions of Sections 8(b) (7) (C) and 9(c) of said Act, and the National Labor Relations Board Rules and Regulations. A notice of such election is being issued.

"I am therefore refusing to issue a complaint in this matter. Pursuant to the National Labor Relations Board Rules and Regulations, you may obtain a review of this action by filing a request for such review with the General Counsel of the National Labor Relations Board, Washington 25, D. C., and a copy with me. This request must contain a complete statement setting forth the facts and reasons upon which it is based. The request should be filed within three (3) days from the date of service of this letter, except that the General Counsel may, upon good cause shown, grant special permission for a longer period within which to file.

"Very truly yours,
"/s/ Gerald A. Brown
"Gerald A. Brown
"Regional Director"